[No. B047219. Second Dist., Div. Seven. Dec. 10, 1990].

CENTINELA HOSPITAL ASSOCIATION, Plaintiff and Appellant,
v.
CITY OF INGLEWOOD et al., Defendants and Respondents;
DIDI HIRSCH PSYCHIATRIC SERVICE, Real Party in Interest
and Respondent.

## COUNSEL

Manatt, Phelps & Phillips, Manatt, Phelps, Rothenberg & Phillips, Alan I. Rothenberg, Sherwin L. Memel, Philip R. Recht, Diane L. Faber, Cox, Castle & Nicholson, Kenneth B. Bley and Eric Tuckman for Plaintiff and Appellant.

Howard Rosten, City Attorney, and Jack Ballas, Chief Assistant City Attorney, for Defendants and Respondents.

Richards, Watson & Gershon, Mitchell E. Abbott, Scott Weible, Steven J. Holcomb, Alschuler, Grossman & Pines, Frank Kaplan, Joan A. Wolff, Baker & Burton and Kent Burton for Real Party in Interest and Respondent.

James J. Preis as Amicus Curiae on behalf of Real Party in Interest and Respondent.

## OPINION

**LILLIE, P. J.**—Centinela Hospital Association, doing business as Centinela Hospital Medical Center (Centinela or Centinela Hospital) appeals from "summary judgment"[1] entered in continued favor of defendants City of Inglewood and City Council of the City of Inglewood (hereinafter referred to collectively as City) and real party in interest Didi Hirsch Psychiatric Service on Centinela's first amended petition for writ of mandate and

[1] As is explained in more detail in part B of the Factual and Procedural Background, captioned "Trial Court Proceedings," the hearing on the summary judgment motion was joined with the hearing on first amended petition for writ of mandamus with respect to the second cause of action alleging City improperly determined the facility was categorically exempt from the California Environmental Quality Act. At the time of the hearing, the trial court questioned whether the third cause of action, containing allegations concerning a violation of the Brown Act (Gov. Code, §§ 54953 and 54960.1), stated a cause of action; the court indicated that in order to resolve all of the issues to get the matter before the appellate court, it was willing to reconsider the demurrer or treat the issue of the sufficiency of the pleading as a motion for summary judgment. No party objected to the trial court's offer to deem the motion for summary judgment to include a test of the sufficiency of the pleading as to issues not expressly raised in the summary judgment motion. Accordingly, although denominated "summary judgment," the document in legal effect is a final judgment, combining a summary judgment as to the first and third causes of action with a judgment after hearing on the amended petition for writ of mandamus as to the second cause of action.

complaint for declaratory and injunctive relief, in which Centinela challenged City's grant to Didi Hirsch of a special use permit for construction of a 15-bed crisis psychiatric facility. The principal issues on this appeal are whether City properly determined the facility was categorically exempt from the provisions of the California Environmental Quality Act (CEQA) and whether Centinela's amended petition for writ of mandate states viable claims challenging City's decision to grant real party's special use permit.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Administrative Proceedings*

Didi Hirsch Psychiatric Service (Didi Hirsch) is the owner of a 13,338 square-foot parcel of property located at 1007 Myrtle Avenue in the City of Inglewood, and zoned R-M (residential and medical). The property is bounded on three sides by other residential uses; across the street to the east is Centinela Hospital. In October 1988, Didi Hirsch filed application for a special use permit to demolish three deteriorated buildings on the property (a single-room occupancy building with ten rooms rented on a weekly basis, an efficiency apartment, and a one-bedroom apartment) and to construct on the site a two-story fifteen-bed crisis residential convalescent facility for those experiencing psychiatric distress.

The City's planning division staff report on Didi Hirsch's application noted that the proposed facility was to have seven bedrooms each with two beds on the second floor, a handicap-equipped bedroom for one person on the first floor, counseling offices, two lounges, a kitchen, dining room, laundry room, four bathrooms, and eight on-site parking stalls; residents at the facility would consist of the chronically mentally ill who can function in the community with a support system of assistance in times of crisis; no residents with a history of "acting out" or violence would be accepted, nor would persons with a primary diagnosis of alcoholism, drug addiction, or mental retardation; residents would stay at the facility up to fourteen days and then would be referred to long-term independent living arrangements, or transitional or board-and-care facilities.

The staff report also stated that the facility would have twenty-four-hour monitoring, with an average staff of six during the day, four in the evening, and three at night; intercom and alarm systems would be used to enhance monitoring.

Subject to special use permit approval, hospitals and convalescent facilities are permitted in Inglewood's R-M residential and medical zone. The staff report indicated that four findings related to the proposed use and its surroundings were required to grant the special use permit, and that the

proposed facility met the four criteria. The staff report recommended that the planning commission grant the special use permit subject to five conditions, not at issue herein.

On November 10, 1988, City issued a notice of exemption, declaring that the proposed facility was "categorically exempt" from CEQA pursuant to section 15303 (Cal. Code Regs., tit. 14, § 15303; hereinafter referred to as Guidelines section 15303).

After an advertised public hearing on December 7, 1988, the City of Inglewood Planning Commission (Commission) adopted a resolution approving the special use permit for the psychiatric facility. The Commission's resolution contained the findings that (1) the site is adequate in size and shape to accommodate the proposed use with adequate facilities and improvements conforming to the requirements of the zoning code; (2) the facility is served by streets of appropriate width and function to carry project-generated traffic, and there is adequate on-site parking; (3) the use of the property conforms with the purpose and intent of the general plan; (4) the proposed use will not adversely affect neighboring properties, occupants thereof, or the permitted uses thereon, or the general public in terms of noise, litter, traffic, parking availability, health, safety or any other factor causing potential detriment to neighboring properties or property values.[2] The resolution further concluded that the facility will have a beneficial impact on public health, safety, and welfare by providing the social advantage of increased community care and service; and granting of the special use permit for the proposed project is categorically exempt from the requirements of CEQA and a categorical exemption has been prepared.

Centinela appealed the decision of the Commission to the City Council of the City of Inglewood. After a noticed public hearing on the appeal on February 7, 1989, the city council closed the public hearing, but kept the record open for the purpose of receiving written briefs on legal issues from attorneys representing Didi Hirsch, Centinela, and from the City Attorney; at the continued hearing on February 28, 1989, the Mayor of Inglewood stated that the council had ordered that the city attorney "receive testimony

---

[2] The resolution elaborates, "The history of the applicant's other Inglewood facility, located at 923 Grevillea Avenue, suggests that their crisis residential program does not have detrimental effects on the neighborhood. The Inglewood Police Department has reported no calls for service at the address since the facility was established in 1982. The programs operated by the applicant are intended to provide clients with care and treatment in a structured environment that is designed to be compatible with the residential communities in which they are located."

With respect to the traffic issue, the resolution states that the "streets surrounding the site are intended to carry traffic generated by multiple-family housing and medical land uses, per the Comprehensive General Plan."

by the attorneys by February 17, and we wanted that testimony by February 23 and that hasn't been done . . . . I want to advise you, this [new information] cannot be considered at this time."

At the hearing, Centinela's attorney pointed out that after the closing of the public hearing on February 7, Centinela discovered information which he believed the City "must consider in making its determination," and Centinela conveyed this information to the City in a February 24, 1989, letter.[3] A representative of Didi Hirsch objected to the city council consideration of the new information offered by Centinela. In response to a question by a member of the city council, the representative of Didi Hirsch stated that the two stabbings involved different situations and facilities than its proposed facility; the stabbing of the social worker in Santa Monica occurred in an open clinic where people walk in off the streets and get help; Jump Street is a shelter for the homeless mentally ill who are not in crisis; the proposed facility has a double layer of screening like its existing Excelsior House program, which has not had any problems. Thereafter, the city council voted unanimously to deny the appeal and affirm the decision granting the special use permit.

B. *Trial Court Proceedings*

Centinela's first amended petition for writ of mandate challenges the granting of the permit for Didi Hirsch's facility on three grounds, each ground set out in a separate cause of action. In the first cause of action, for writ of mandate under Code of Civil Procedure section 1094.5, Centinela alleges that City's findings were unsupported by substantial evidence and City failed to receive evidence and make findings on certain "public safety" issues; in a second cause of action for writ of mandate under CEQA, Centinela alleges that City improperly determined Didi Hirsch's psychiatric facility is categorically exempt from the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.); in the third cause of action for writ of mandate under the Brown Act, Centinela alleges that private meetings between the Inglewood City Attorney and each of several members of the city council, occurring earlier on the day of the February 28, 1989 hearing of Centinela's appeal to the city council from the decision of the City planning Commission, violated Gov-

---

[3] In its February 24 letter, part of the administrative record herein, Centinela challenged Didi Hirsch's process used to screen people with histories of drug abuse and violent behavior from its facilities. Centinela referred to and attached two recent newspaper accounts in which one individual, allegedly with a long history of violent behavior and a user of PCP, fatally stabbed his mother and was admitted to a Didi Hirsch facility known as Jump Street where he stayed for ten days before being arrested by the police; another article dealt with an individual who had just that week stabbed a social worker at a Santa Monica clinic and who had, the month before, been approved for admission to the Jump Street facility.

ernment Code section 54953, thus rendering the city council's decision null and void under the Brown Act.[4]

After answering the amended petition, Didi Hirsch filed motion for summary judgment or, in the alternative, for summary adjudication that certain issues were without substantial controversy. The ground of real party's motion for summary judgment was that Welfare and Institutions Code section 5120 (section 5120) preempted CEQA and the Brown Act, and that section 5120 removed any discretion of City to deny its special use permit.[5] Although City filed a memorandum in support of real party's motion for summary judgment, City disagreed with Didi Hirsch's interpretation of section 5120; City argued that while section 5120 limits the ability of municipalities to discriminate, through their zoning restrictions, against mental health facilities in areas where a hospital or other health facility would be permitted, section 5120 does not eliminate the discretion of a city to apply other generally applicable nondiscriminatory criteria in granting or denying a special use permit.

While Centinela's opposition to the motion for summary judgment essentially agreed with City's interpretation of section 5120, Centinela argued that the City's interpretation of the statute was not dispositive and should not lead to summary judgment in favor of real party because real party's motion did not address the merits of the CEQA and Brown Act claims.[6]

---

[4] Although the amended petition contained a fourth and fifth "cause of action" captioned respectively "declaration of rights" and "injunction," these portions of the pleading merely sought remedies based on the same three grounds previously pleaded and are therefore duplicative. If the trial court properly determined Centinela is not entitled to relief on any of the three grounds, the fourth and fifth "causes of action" are necessarily without merit.

[5] Section 5120 provides: "It is the policy of this state as declared and established in this act and in the Lanterman-Petris-Short Act that the care and treatment of mental patients be provided in the local community. In order to achieve uniform statewide implementation of the policies of this act, it is necessary to establish the statewide policy that, notwithstanding any other provision of law, no city or county shall discriminate in the enactment, enforcement, or administration of any zoning laws, ordinances, or rules and regulations between the use of property for the treatment of general hospital or nursing home patients and the use of property for the psychiatric care and treatment of patients, both inpatient and outpatient. [¶] Health facilities for inpatient and outpatient psychiatric care and treatment shall be permitted in any area zoned for hospitals or nursing homes, or in which hospitals and nursing homes are permitted by conditional use permit."

[6] Centinela is technically correct that under City's interpretation of section 5120, essentially the same interpretation adopted by the trial court, judgment could not be entered in favor of real party and City unless there was an additional determination that the causes of action in the amended petition were without merit. Although real party's summary judgment motion did not address the issues that would arise under City's interpretation of section 5120, the issue of the sufficiency of the evidence to support the filing of the notice of exemption from CEQA was addressed in the context of the hearing on the amended petition with respect to the CEQA cause of action. Accordingly, the issue of the merits of the CEQA claim was before the court, not as part of the summary judgment motion, but in a separate hearing

At the same time as the hearing on the motion for summary judgment, the court also heard Centinela's petition for writ of mandate with respect to the CEQA cause of action. It is apparent from the hearing on the above matters that the trial court also discussed the Brown Act claim and stated its belief that the petition failed to state a claim under this theory. No party argued that the trial court could not consider the issue of the sufficiency of the pleadings in light of its interpretation of section 5120. After taking the matters under submission, the court on November 2, 1989, issued a ruling on submitted matter.[7] On December 1, 1989, a "summary judgment" was entered, stating in pertinent part that "the court now finds that respondents and real party in interest have shown by admissible evidence and reasonable inferences from the evidence that the proceeding has no merit, that petitioner has presented no triable issue of fact, and that respondents and real party in interest are entitled to judgment as a matter of law. Now therefore, [¶] IT IS HEREBY ORDERED that real party in interest's motion for summary judgment is GRANTED. [¶] IT IS FURTHER ORDERED that judgment be entered in accordance with this order in favor of respondents, City of Inglewood and City Council of the City of Inglewood and in favor of the real party in interest, Didi Hirsch Psychiatric Service, and against petitioner Centinela Hospital Association as prayed in the answers to the first amended petition and complaint."

Centinela filed timely notice of appeal from the judgment and raises numerous issues on appeal. We first discuss several of Centinela's contentions, addressed to the first and third causes of action (writ of mandate

on the petition for writ of mandate. At the hearing, the trial court intimated it would also consider the sufficiency of the other causes of action of the amended petition by reconsidering the demurrer or considering the issue of the sufficiency of the pleading to be part of the summary judgment motion. No party objected to such a procedure.

[7] The ruling on submitted matter stated in pertinent part: "The legislature, sensitive to the irrational fear of and aversion to the mentally ill, enacted Welfare and Institutions Code section 5120 mandating that local agencies permit treatment facilities wherever hospitals are permitted. But this provision (the second paragraph of Section 5120) must be read in the context of the first paragraph's focus on eliminating discrimination. Thus, psychiatric facilities must be treated equally with hospitals regarding any requirements such as CEQA, Brown Act, or any other requirements of law or local regulation. [¶] By way of example, if proper zoning or environmental consideration would limit a *hospital* facility to a particular size or configuration, those same limitations can limit a psychiatric facility, if applied on an even-handed basis . . . . [¶] It might be argued that even under Section 5120, if a 500-bed hospital were operating in a particular area whose circumstances made an additional facility of 500 beds, psychiatric or otherwise, environmentally disastrous, it would not constitute a violation of the section, if the local agency required some mitigation, or relocation within the zone, etc. [¶] But the undisputed facts here establish that the proposed facility is of such small size that considerations of saturation or significant environmental impact is [*sic*] not even suggested, as evidenced by the fact that the project has been properly exempted from the EIR requirements pursuant to Public Resources Code section 21084 . . . . [¶] Motion for Summary Judgment is *granted*."

under Code of Civil Procedure section 1094.5 and writ of mandate under the Brown Act) which we consider to be premised on an incorrect interpretation of the record and the "summary judgment."

I

## "SUMMARY JUDGMENT" INCLUDES RULING ON SUFFICIENCY OF PLEADINGS

Although appellant essentially agrees with the trial court's interpretation of section 5120 as not preempting CEQA, the Brown Act, or other local regulations, Centinela argues that the trial court still should have denied the motion for summary judgment because the motion did not address all issues in the case and did not establish that there was no triable issue of fact as to the first and third causes of action of the amended petition for writ of mandate. Apparently relying on the fact that the November 2, 1989, ruling on submitted matter is silent on the merits of the first and third causes of action, appellant claims that the trial court did not address the merits of the first and third causes of action, and it should have been afforded an opportunity for discovery and trial on those causes of action.

■ A defendant's motion for summary judgment addresses the legal question whether there are undisputed material facts which foreclose the plaintiff's right to relief. (*Panattoni* v. *Superior Court* (1988) 203 Cal.App.3d 1092, 1094 [250 Cal.Rptr. 390].) Such a motion necessarily includes a test of the sufficiency of the complaint. (*Blanch* v. *Young* (1984) 152 Cal.App.3d 1016, 1019 [200 Cal.Rptr. 9].)

■ "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83], internal quotation marks omitted, original italics.) As all intendments are in favor of the judgment, we presume the trial court decided all material issues. (*C. E. Buggy, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1989) 213 Cal.App.3d 1150, 1155, fn. 1 [261 Cal.Rptr. 915].)

A judgment will not be set aside because of a failure to make an express finding upon an issue if a finding on it, consistent with the judgment, results by necessary implication from the express findings which are made. (*County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848, 867 [223 Cal.Rptr. 846].)

In light of the foregoing principles, the court's "summary judgment," must be interpreted as including a determination that the first and third causes of action fail to state sufficient claims for relief. This is a necessary implication from the "summary judgment." ■ ■■■■ We proceed to address the issue whether, given the trial court's interpretation of section 5120, with which appellant agrees, the first and third causes of action of the amended petition state viable claims.[8]

## II

### FIRST CAUSE OF ACTION

■ Appellant maintains that the trial court erred in dismissing the first cause of action because under Inglewood Municipal Code section 12-95.3, setting out the criteria governing special use permits, the City was required to consider the issue of safety, but did not do so. Appellant is correct in pointing out that the Inglewood Municipal Code does require a finding that the "proposed use will not adversely affect neighboring properties, the occupants thereof or the permitted uses thereon, or the general public in terms of . . . safety." However, it is clear that the "safety" to which appellant refers is based on the danger posed to the neighborhood by the nature of the patients at Didi Hirsch.[9]

---

[8] On appeal, Didi Hirsch argues that there are two possible interpretations of section 5120. One interpretation is consistent with that of City and Centinela. The other interpretation is that the statute preempts any authority of City to exclude or regulate the proposed facility. Didi Hirsch, and amici curiae, suggest that under section 5120, the City of Inglewood has no power to prevent the operation of the proposed facility, does not have the authority to require Didi Hirsch to apply for a special use permit, and also presumably has no authority to impose on Didi Hirsch requirements under CEQA and the Brown Act. Appellant also discusses the "preemption" issue at great length, arguing that section 5120 prevents discrimination but does not prevent City from exercising its discretion in a nondiscriminatory fashion as to whether a permit should be granted, and does not preempt other state laws, including CEQA and the Brown Act.

While we appreciate the desire of all parties for a resolution of the issue of whether section 5120 preempts other state laws or the nondiscriminatory application of local laws and regulations, we need not address this issue to resolve this appeal, and thus decline to discuss the merits of this issue. The fact of the matter is that Didi Hirsch did apply for a special use permit and did obtain one; although the planning Commission did attach five conditions to the permit, Didi Hirsch did not appeal that decision. Didi Hirsch did not bring any action in the trial court challenging City's decisions. As Didi Hirsch does not challenge any exercise of discretion by City in this case, the question whether City had the *authority* to exercise discretion is primarily only of academic importance in this case. " 'An appellate court will not review questions which are moot and which are only of academic importance. It will not undertake to determine abstract questions of law at the request of a party who shows that no substantial rights can be affected by the decision either way.' " (*Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 554, fn. 8 [223 Cal.Rptr. 792].)

[9] This is the evidence that appellant says the City should have considered under "safety," and how appellant attempts to justify such considerations under section 5120: "Section 5120

Appellant fails to show that in granting or denying special use permits to hospitals the City considers the nature of the patients to be served as impacting on public safety. Accordingly, any such consideration of the nature of Didi Hirsch's patients in this case would constitute discrimination in violation of section 5120.

We do not read the first cause of action as challenging the evidentiary support for the actual findings made by the Commission and City; rather Centinela urges therein that additional issues should have been considered by the City and were not. We conclude that these additional considerations are prohibited by section 5120. Accordingly, the first cause of action fails to allege sufficient facts showing that City failed to make any findings required under its municipal code.[10] We conclude that the court properly granted summary judgment as to the first cause of action.

## III

### BROWN ACT CLAIM

### (THIRD CAUSE OF ACTION)

 Centinela contends that a series of "private meetings" between the Inglewood City Attorney and members of the city council earlier in the day before the public hearing on February 28, 1989, in which the City Attorney discussed his interpretation of section 5120, violates the Brown Act, Gov-

---

requires nothing more than non-discriminatory consideration of facts. Clearly, the City could consider the safety hazard posed by the nature of patients—for example, prison inmates, alcohol and drug addicts—proposed to be treated at a hospital. It is not discriminatory to do the same for psychiatric facilities seeking a permit. [¶] Moreover, safety, as concerns psychiatric facilities, is not merely a function of the nature of psychiatric illness. Rather, it is related to the proposed configuration, size, and location of a facility, the type of patients to be treated, the treatment goals and intended length of stay, and the success of the screening process used to choose the patient population . . . . [¶] Centinela's safety concern was not simply that Didi Hirsch proposed to treat patients with psychiatric illnesses, but that the patients would be in crisis, yet wholly unrestrained, notwithstanding their location across the street from sensitive facilities of the hospital; further, that Didi Hirsch's screening process is not fail-safe in keeping out patients with violent behavior. Such issues are relevant to the safety factor and, under Inglewood's Municipal Code and section 5120, the City Council was required to consider the safety issue."

[10] The first cause of action also alleges that City's decision granting the permit will result in an impermissible overconcentration of residential care facilities pursuant to Health and Safety Code section 1520.5, subdivision (a). This section (which provides in part that the director of the state licensing agency "shall deny an application for a new residential care facility license if the director determines that the location is in such proximity to an existing residential care facility as would result in overconcentration,") clearly governs licensing decisions, not the City's granting or denial of a special use permit. *City's* failure to apply this statute does not provide a basis to challenge City's decision herein.

ernment Code section 54953, and renders the city council's decision to uphold the granting of the permit null and void.

While we are not all that sure under the facts herein that such meetings constituted violations of Government Code section 54953,[11] even were we to assume a violation, Centinela has not pleaded a viable cause of action.

Before the enactment of Government Code section 54960.1 in 1986, the validity of an action taken in violation of section 54953 of the Brown Act was not affected. (See *Santa Clara Federation of Teachers* v. *Governing Board* (1981) 116 Cal.App.3d 831, 846 [172 Cal.Rptr. 312]; *Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 474 [85 Cal.Rptr. 924]; see also *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774-775 [7 Cal.Rptr. 805] [the Brown Act provides no penalty for infraction and no method of enforcement, which ordinarily implies absence of intent to make the statute mandatory; however Gov. Code § 1222 and Pen. Code § 177 apply to make violation a misdemeanor; the criminal penalty "precludes all others . . . and leaves private persons, though taxpayers, without any right to declaratory relief or injunction incidental thereto"].)

Government Code section 54960.1 provides in pertinent part that, "(a) Any interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953 . . . is null and void under this section. Nothing in this chapter shall be construed to prevent a legislative body from curing or correcting an action challenged pursuant to this section."

---

[11] Government Code section 54953, subdivision (a) provides that, "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."

At the conclusion of the first public hearing on the appeal on February 7, 1989, the city council and city attorney invited counsel for Didi Hirsch and Centinela to submit briefs on the legal issues to the city attorney, which briefs would be sent to the city council and made part of the administrative record; the city attorney also stated that, "I will at the same time be preparing my own analysis of the law, based partially on the analysis I get from both sides and my own analysis for the City Council."

It is undisputed on our record that Centinela was informed of the city attorney's interpretation of section 5120 well before the February 7 hearing, and in a January 19, 1989, letter, which informed Centinela that, "It is my intention to advise the City Council of my legal opinion at or prior to the hearing." The city attorney's written memoranda on this issue are part of the administrative record. There is no allegation that the "private meetings" conveyed any information or opinions not contained in written documents made part of the record. Accordingly, under the facts herein, the alleged "private meetings" were expressly contemplated by all parties and no one objected to the procedure at the time it was outlined in the city attorney's January 19 letter and at the time of the February 7 hearing. Our record thus reveals substantial compliance with section 54953. (See Gov. Code, § 54960.1, subd. (c)(1).)

As used in the above statute, "action taken" means "a collective decision made by a majority of the members of a legislative body, a collective commitment or promise by a majority of the members of a legislative body to make a positive or a negative decision, or an actual vote by a majority of the members of a legislative body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance." (Gov. Code, § 54952.6.)

While the pleading herein alleges that there were *discussions*, the petition does not allege that in such discussions any action was taken within the meaning of section 54960.1. It is without dispute that all "actions taken" by the city council herein were at duly noticed public hearings. The petition fails to state grounds for relief under Government Code section 54960.1, and summary judgment was properly granted on the third cause of action.

## IV

### CEQA CLAIM

#### (SECOND CAUSE OF ACTION)

■ Appellant maintains that the City's notice of exemption and finding that the project was categorically exempt from the requirements of CEQA are invalid as the facility does not fall within the type of projects described in Guidelines section 15303, subdivisions (b) or (c). Appellant also argues that because the project will have significant effect on the environment, the exemption should have been denied.

"Public Resources Code section 21168.5 provides that where no administrative hearing is required, as in the case at bar, judicial review 'shall extend only to whether there was a prejudicial abuse of discretion,' which is established 'if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' " (*East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 165 [258 Cal.Rptr. 147].)

"The scope of an exemption provided by statute is a question of statutory interpretation and also one of law. In reviewing the trial court's ruling, the appellate court has an independent function, and need not defer to the trial court's ruling." (*Verdugo Woodlands Homeowners etc. Assn.* v. *City of Glendale* (1986) 179 Cal.App.3d 696, 702 [224 Cal.Rptr. 903].)

"Title 14 [of the California Code of Regulations] contains guidelines (Guidelines) developed by the State Office of Planning and Research and adopted by the Secretary of the Resources Agency 'for the implementation

of [CEQA] by public agencies.' (Pub. Resources Code, § 21083.)" (*East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist., supra*, 210 Cal.App.3d 155, 164.) "Guidelines section 15354 defines 'categorical exemption' as an exemption from CEQA for a class of projects based on a finding by the Secretary for Resources that the class of projects does not have a significant effect on the environment. Guidelines sections 15301 through 15329 contain 29 classes of categorical exemptions." (*Ibid.*)

Guidelines section 15303 states in pertinent part that, "Class 3 consists of construction and location of limited numbers of new, small facilities or structures; . . . and the conversion of existing small structures from one use to another where only minor modifications are made in the exterior of the structure . . . . Examples of this exemption include but are not limited to: [¶] (a) Single-family residences . . . . In urbanized areas, up to three single-family residences may be constructed or converted under this exemption. [¶] (b) Apartments, duplexes, and similar structures, with no more than four dwelling units if not in conjunction with the building or conversion of two or more such structures. In urbanized areas, exemption applies to single apartments, duplexes, and similar structures designed for not more than six dwelling units if not constructed in conjunction with the building or conversion of two or more such structures. [¶] (c) Stores, motels, offices, restaurants, and similar small commercial structures not involving the use of significant amounts of hazardous substances, if designed for an occupant load or 30 persons or less . . . ."

As a matter of law, we conclude that the proposed facility herein falls within the class 3 exemption because it is similar to both the apartments and duplexes permitted under subdivision (b) and the small commercial structures permitted under subdivision (c) of Guidelines section 15303. We find to be without merit appellant's claim that in determining whether the facility meets the requirement in subdivision (c) pertaining to the occupant load of 30 persons or less, we should apply the calculations set out in the Inglewood Municipal Code for determining the "occupant load" for hospitals, sanitariums, nursing homes, or dormitories.

Appellant's claim that the notice of exemption is invalid because it mistakenly describes the size of the facility is also without merit. Although the notice of exemption describes the facility as consisting of 2,700 square feet, it is clear from the permit application and the staff report that the facility was to be 2-story, each story consisting of 2,700 square feet, for a total of about 5,400 square feet. There is no evidence in our record that City was misled by an apparent clerical error in the notice of exemption to believe that the proposed facility consisted of a total of only 2,700 square feet.

Moreover, appellant fails to provide any authority that a residential care facility of 5,400 square feet does not qualify for a class 3 exemption.

Finally, appellant claims that it was error to grant a categorical exemption because the facility has a significant effect on the environment, one of the exceptions to the categorical exemptions. Guidelines section 15300.2 contains exceptions to categorical exemptions. Subdivision (c) of this section provides that a "categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

When appellant argues that the facility is located "at an extremely sensitive location in terms of public usage and traffic," and it "will create a health and safety hazard, which in turn, will place increased demands on public services such as police and fire protection," appellant is asking us to adopt an improper standard of review and independently reweigh the evidence. We conclude that substantial evidence supports the express findings of the Commission and city council as to traffic and public health and safety issues and substantial evidence supports the implied finding in the notice of exemption that the facility would not cause any significant environmental effects. Accordingly, the trial court properly entered judgment in favor of City and Didi Hirsch on the first amended petition for writ of mandate on the CEQA cause of action.

### DISPOSITION

The judgment is affirmed.

Woods (Fred), J., and Croskey, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1991.

---

* Assigned by the Chairperson of the Judicial Council.