LIU, J.,
Concurring. — I agree with today’s opinion that “a finding of environmental impacts must be based on the proposed project as actually approved and may not be based on unapproved activities that opponents assert will be necessary because the project, as approved, cannot be built.” (Maj. opn., ante, at p. 1119.) This rule will not lead to evasion of the environmental review requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) because presumably a *1123 developer’s failure to build the project as approved will be remedied by the local agency that approved the project. Where opponents of a project make a credible argument that it cannot be built as approved, a trial court may exercise its discretion to retain continuing jurisdiction after rendering a judgment in order to ensure CEQA compliance. (See 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 420, pp. 1070-1071; City of Pasadena v. City of Alhambra (1949) 33 Cal.2d 908, 936 [207 P.2d 17] [court reserves jurisdiction to modify water rights judgment “ ‘in the event material change be found or any such abandonment or forfeiture be established’ ”].) In this case, because the trial court and Court of Appeal did not limit, environmental review to projects actually approved, I agree that reversal and remand are warranted. (Maj. opn., ante, at pp. 1119-1121.)
I do not agree, however, with the court’s reading of section 15300.2, subdivision (c) of the CEQA guidelines (Cal. Code Regs., tit. 14, § 15000 et seq. (Guidelines)) or with the court’s novel and unnecessarily complicated approach to the standard of review. Section 15300.2, subdivision (c) (hereafter section 15300.2(c)) provides that a categorical exemption from CEQA review shall not apply when “there is a reasonable possibility that the activity will have a significant effect on the environment, due to unusual circumstances.” The court says this language establishes two distinct requirements for section 15300.2(c)’s applicability: (1) there must be a reasonable possibility the project will have significant environmental effects and (2) those effects must be due to unusual circumstances. But, as explained below, a project falling within a categorical exemption is, by definition, a project belonging to a class of projects that does not have significant environmental effects. (See Pub. Resources Code, § 21084, subd. (a).) When there is a reasonable possibility that a project otherwise covered by a categorical exemption will have a significant environmental effect, it necessarily follows that the project presents unusual circumstances. In other words, the reasonable possibility of a significant environmental effect means that some circumstance of the project is not usual in comparison to the typical project in the exempt category. Instead of comprising a distinct requirement, the phrase “unusual circumstances” in section 15300.2(c) simply describes the nature of a project that, while belonging to a class of projects that typically have no significant environmental effects, nonetheless may have such effects. The sole question for courts reviewing agency determinations under section 15300.2(c) is whether substantial evidence supports a fair argument that the project will have significant environmental effects.
It is unfortunate that today’s opinion, instead of simplifying the law in accordance with the CEQA statute and Guidelines, adds further complexity to an area that many courts, practitioners, and citizens already find difficult to navigate. Nevertheless, I expect that after today’s decision, as before, courts reviewing agency determinations under section 15300.2(c) will be guided by *1124 that Guideline’s basic purpose, which echoes the statutory mandate: to ensure that projects with a reasonable possibility of significant environmental effects are not exempted from CEQA review.
I.
The main purpose of environmental review under CEQA is to “identify the significant effects on the environment of a project” and to identify project alternatives and feasible mitigation measures. (Pub. Resources Code, § 21002.1, subd. (a); all statutory references are to this code unless otherwise indicated.) Consistent with that purpose, the Legislature created categorical exemptions and directed the Secretary of the Natural Resources Agency (the Secretary) to list classes of projects exempt from CEQA review. Section 21084, subdivision (a) (hereafter section 21084(a)) provides: “The guidelines prepared and adopted pursuant to Section 21083 shall include a list of classes of projects that have been determined not to have a significant effect on the environment and that shall be exempt from this division. In adopting the guidelines, the Secretary of the Natural Resources Agency shall make a finding that the listed classes of projects referred to in this section do not have a significant effect on the environment.” (Italics added.) Thus, section 21084(a) instructs the Secretary to exempt from CEQA review only classes of projects that do not have a significant effect on the environment.
The exempt classes of projects listed by the Secretary stand in contrast to statutory exemptions created by the Legislature. The latter include certain kinds of affordable housing (§ 21159.23), certain high priority transit projects (§ 21155.1), and the construction of certain prisons (§§ 21080.01, 21080.02). The statutory exemptions are not based on any determination that the exempt projects will not have significant environmental effects. Instead, they are based on the Legislature’s determination that each of the exemptions “promote[s] an interest important enough to justify forgoing the benefits of environmental review.” (Napa Valley Wine Train, Inc. v. Public Utilities Com. (1990) 50 Cal.3d 370, 382 [267 Cal.Rptr. 569, 787 P.2d 976].) The categorical exemptions authorized by section 21084(a) are fundamentally different. They are not based on a judgment that certain categories of projects should be exempt despite their potential effect on the environment. They are based on a wholesale judgment that projects within the exempt category will not have significant environmental effects.
The fact that a categorical exemption reflects a wholesale judgment about a class of projects, and not an individual judgment about a particular project, gives rise to the interpretive question before us. A class of projects “determined not to have a significant effect on the environment” (§ 21084(a)) — for example, a single-family residence — may turn out to be overinclusive insofar *1125 as it includes some projects that fit the category but nevertheless may have significant environmental effects. How are such outliers to be treated under the CEQA scheme?
One approach would be to say that section 21084(a) permits such overinclusion because most projects in an exempt class will not have significant environmental effects and the efficiency gains of exempting the entire class outweigh the value of requiring CEQA review of the few projects in the class that may have significant effects. But neither the court nor any party has advanced this theory, and for good reason.
In Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 205-206 [132 Cal.Rptr. 377, 553 P.2d 537] (Chickering), we said that “no regulation is valid if its issuance exceeds the scope of the enabling statute. [Citations.] The [Secretary is empowered to exempt only those activities which do not have a significant effect on the environment. (Pub. Resources Code, § 21084.) It follows that where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper.” Section 15300.2(c), promulgated shortly after Chickering, was an attempt to codify Chickering and its understanding of section 21084(a). A portion of section 15300.2’s rulemaking file reproduced by appellants confirms this regulatory intent, and respondents do not suggest otherwise. (See 1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar2d ed. 2008) § 5.72, p. 5-62 (rev. 3/14) (1 Kostka & Zischke) [§ 15300.2(c) “adopted to codify the court’s ruling” in Chickering that the Secretary “may exempt only activities that do not have a significant effect on the environment”]; Communities for a Better Environment v. California Resources Agency (2002) 103 Cal.App.4th 98, 129 [126 Cal.Rptr.2d 441] (Communities for a Better Environment) [§ 15300.2(c) exception to categorical exemptions was “based on the Chickering decision”].)
Section 15300.2(c) reads in full: “Significant Effect. A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances.” This language is one of six provisions under the heading “Exceptions” in section 15300.2 of the Guidelines. Like section 15300.2(c), each of the other five provisions makes the categorical exemptions authorized by section 21084(a) inapplicable to projects that, while belonging to an exempt class, have certain characteristics that raise environmental concerns. (See §§ 15300.2, subd. (a) [exception for “a project . . . ordinarily insignificant in its impact on the environment [that] may in a particularly sensitive environment be significant”], 15300.2, subd. (b) [exception for “successive projects of the same type in the same place” whose “cumulative impact . . . over time is significant”], 15300.2, subd. (d) *1126 [exception for “a project which may result in damage to scenic resources . . . within ... a state scenic highway”], 15300.2, subd. (e) [exception for a project located on a hazardous waste site], 15300.2, subd. (f) [exception for a project that may adversely affect a historical resource].)
This regulatory structure — categorical exemptions, with various exceptions to the exemptions — confirms that “a categorical exemption authorized by CEQA section 21084 is an exemption from CEQA for a class of projects that the Resources Agency determines will generally not have a significant effect on the environment.” (Communities for a Better Environment, supra, 103 Cal.App.4th at p. 127; see Azusa Land, Reclamation Co. v. Main San Gabriel Basin Watermaster (1997) 52 Cal.App.4th 1165, 1206 [61 Cal.Rptr.2d 447] (Azusa) [a categorical exemption identifies “a class of activities that does not normally threaten the environment” (italics added)].) The Guidelines anticipate the overinclusivity of categorical exemptions and address the problem by establishing a list of exceptions.
In construing section 15300.2(c), it is worth noting that the title of the provision is “Significant Effect.” Hence I shall refer to section 15300.2(c) as the “significant effect exception.” In calling section 15300.2(c) the “unusual circumstances exception,” today’s opinion ignores the title and places primary emphasis on a term that the provision itself does not emphasize.
As the court acknowledges, the term “unusual circumstances” first appeared in the context of CEQA review in Friends of Mammoth v. Board of Supervisors (1972) 8 Cal.3d 247, 272 [104 Cal.Rptr. 761, 502 P.2d 1049] (Friends of Mammoth), and this usage is key to understanding section 15300.2(c). In Friends of Mammoth, we said that “common sense tells us that the majority of private projects for which a government permit or similar entitlement is necessary are minor in scope — e.g., relating only to the construction, improvement, or operation of an individual dwelling or small business — and hence, in the absence of unusual circumstances, have little or no effect on the public environment. Such projects, accordingly, may be approved exactly as before the enactment of the [CEQA].” (8 Cal.3d at p. 272, italics added.) We did not suggest that a finding of “unusual circumstances” was a prerequisite to CEQA review. Rather, we used that phrase in the course of acknowledging that private projects generally do not have significant effects on the environment, and so when they do, such effects will be due to unusual circumstances. Reading “unusual circumstances” in this straightforward manner squares section 15300.2(c) with both Friends of Mammoth and Chickering.
This understanding of “unusual circumstances” is restated in Communities for a Better Environment, supra, 103 Cal.App.4th 98, a case concerning the *1127 in-fill development exemption under section 15332 of the Guidelines. In explaining that environmental effects not mentioned in section 15332, such as aesthetics or health and safety impacts, must be considered in determining the exemption’s applicability, the court said: “These other environmental effects . . . would constitute ‘unusual circumstances’ under this exception for a project that otherwise meets the Guidelines section 15332 criteria. This is because a project that does meet the comprehensive environmentally protective criteria of section 15332 normally would not have other significant environmental effects; if there was a reasonable possibility that the project would have such effects, those effects would be ‘unusual circumstances’ covered by the section 15300.2, subdivision (c) exception.” (Communities for a Better Environment, at p. 129.)
In sum, when there is a reasonable possibility of a significant environmental effect from a project belonging to a class that generally does not have such effects, the project necessarily presents “unusual circumstances,” and section 15300.2(c) applies.
II.
Today’s opinion objects that this reading of section 15300.2(c) would result in categorically exempt projects being treated the same as nonexempt projects', thereby undermining the purpose of categorical exemptions. “Try as they might,” the court says, “appellants can identify no purpose or effect of the categorical exemption statutes if, as they assert, a showing of . . . potential environmental effect precludes application of all categorical exemptions.” (Maj. opn., ante, at p. 1102.) “[T]o establish the unusual circumstances exception, it is not enough for a challenger merely to provide substantial evidence that the project may have a significant effect on the environment, because that is the inquiry CEQA requires absent an exemption. (§ 21151.) Such a showing is inadequate to overcome the Secretary’s determination that the typical effects of a project within an exempt class are not significant for CEQA purposes.” {Id. at p. 1105.) The court is thus led to conclude that the term “due to unusual circumstances” sets forth a requirement separate and distinct from “a reasonable possibility [of] significant effect[s]” in section 15300.2(c). In turn, the court devises a novel “bifurcated” standard of review that evaluates whether there is a reasonable possibility of a significant environmental effect under the fair argument standard, while evaluating whether significant effects are due to unusual circumstances under a deferential substantial evidence standard. (Maj. opn., ante, at pp. 1115-1116.) This approach, the court suggests, is necessary in order to treat categorically exempt projects differently' from nonexempt projects and thereby realize the purpose of categorical exemptions.
*1128 But the major premise of the court’s reasoning is faulty, for there are two reasons why it is not true that categorical exemptions would have no value if we interpret section 15300.2(c) to apply whenever there is a reasonable possibility of significant environmental effects.
First, when an agency has determined that a project falls within an exempt category, the project enjoys a considerable procedural advantage. For any project not covered by a categorical or other exemption, the reviewing agency has the burden of conducting an initial study into whether the project will have significant environmental effects. (See Guidelines, § 15063, subd. (a).) The project may proceed without further environmental review only if the agency issues a negative declaration identifying the project’s environmental effects and explaining why they are not significant. (See id., § 15063, subd. (b)(2); 1 Kostka & Zischke, supra, § 6.2, pp. 6-6 to 6-7 (rev. 3/14).) Notice and public review and comment are required of a negative declaration, and an agency must consider comments and potentially modify its conclusions in response to those comments. (See 1 Kostka & Zischke, supra, §§ 7.10, pp. 7-9 to 7-10, 7.19, pp. 7-16 to 7-17 (rev. 3/14).)
By contrast, an agency finding that a project falls into an exempt category need not follow any particular procedure nor include any written determination, and the agency need not undertake an initial study or adopt a negative declaration. (See 1 Kostka & Zischke, supra, § 5.114, pp. 5-100 to 5-101 (rev. 3/14).) When an agency finds that a project is subject to a categorical exemption, it impliedly finds that it has no significant environmental effect, and the burden shifts to the challengers of the proposed project to produce evidence that the project will have a significant effect. (Id. at § 5.71, pp. 5-61 to 5-62 (rev. 3/14), and cases cited therein.) Once an agency finds a project categorically exempt, it is the project opponent’s burden to produce evidence that the significant effect exception applies.
This procedural advantage should not be underestimated. In many cases, categorical exemptions are not litigated, and the applicability of the exemption is evident. In the mine-run of cases, the efficiency gains of sparing the agency the task of conducting an initial study and issuing a negative declaration provide a strong policy justification for categorical exemptions. Moreover, as is generally true of burden allocations in the law, in cases where an exemption’s applicability presents a close issue, requiring the challenger to show the reasonable possibility of a significant effect, instead of requiring the agency to show no such effects, can be determinative.
The court says this procedural advantage is “largely illusory” because “an agency may not apply a categorical exemption without considering evidence in its files of potentially significant effects, regardless of whether that *1129 evidence comes from its own investigation, the proponent’s submissions, a project opponent, or some other source.” (Maj. opn., ante, at p. 1103.) But an agency’s obligation to consider evidence in its files of potentially significant effects can hardly be equated with an agency’s obligation, in the case of a nonexempt project, to undertake an initial study of the project’s environmental effects, to solicit and consider public comments on the study, and to issue a negative declaration explaining why potential environmental impacts would not be significant. The procedural burdens falling on agencies when they review nonexempt projects are considerably greater than when they review categorically exempt projects. The court’s suggestion to the contrary will certainly come as news to the agencies that undertake these different review procedures.
Moreover, an agency finding that a project falls into an exempt category confers a second advantage. As the court observes, the Secretary had to interpret the meaning of “significant effects” in order to identify classes of projects with no significant effects pursuant to section 21084(a). The Secretary’s designation of an exempt category reflects a judgment that projects in the category typically do not have significant environmental effects, and this judgment is entitled to considerable weight. When an opponent seeks to subject such a project to CEQA review, the proponent can make two comparative arguments (assuming they are supported by evidence) that are unavailable in the case of a nonexempt project. First, the proponent can argue that the project’s effects are typical of the effects generated by projects in the exempt category, such that few or no projects in the category would be exempt if the effects were deemed significant. Second, the proponent can argue that the project’s dimensions or features are not unusual compared to typical projects in the exempt category, thereby suggesting that the project is similar to those that the Secretary has determined not to have a significant environmental effect. The availability of these arguments shows that the phrase “ ‘due to unusual circumstances’ ” is not “meaningless surplusage.” (Maj. opn., ante, at p. 1104.) Such arguments make it more likely that a project belonging to an exempt category will be able to bypass the environmental review that would otherwise be required in the absence of any categorical exemption. (See, e.g., San Francisco Beautiful v. City and County of San Francisco (2014) 226 Cal.App.4th 1012, 1025 [172 Cal.Rptr.3d 134] (San Francisco Beautiful); Fairbank v. City of Mill Valley (1999) 75 Cal.App.4th 1243, 1260 [89 Cal.Rptr.2d 233] (Fairbank); Association for Protection etc. Values v. City of Ukiah (1991) 2 Cal.App.4th 720, 736 [3 Cal.Rptr.2d 488] (Ukiah).
The court says this advantage is also “illusory” because “evidence a project proponent offers to show that the project will only have typical effects, dimensions, and features is irrelevant if a project opponent can make a mere fair argument that those effects, dimensions, or features are not typical, or *1130 that the project will have a significant environmental effect.” (Maj. opn., ante, at pp. 1103-1104.) But evidence of typicality is surely relevant to whether a project opponent can make a fair argument of atypical features or significant effects. This is confirmed by the cases just cited (San Francisco Beautiful, Fairbank, and Ukiah), each of which relies on such comparative arguments in finding no substantial evidence of a fair argument of significant effects. The court nowhere suggests these cases erred in their reasoning or results. The fact that comparative arguments may not always defeat a fair argument of significant effects does not negate their value in the cases where they do.
Today’s opinion also contends that under my reading of section 15300.2(c), a project proponent who claims a categorical exemption is in a “similar” position to the proponent of a nonexempt project who claims the commonsense exemption in Guidelines section 15061, subdivision (b)(3). (Maj. opn., ante, at pp. 1098-1099, 1102.) But the term “similar” is a fudge. The court says “similar” rather than “equivalent” because it does not and cannot deny that there is a difference between the commonsense exemption and the reasonable possibility standard. The commonsense exemption is available only when the agency, based on the record evidence, meets its burden of demonstrating “with certainty that there is no possibility that the activity in question may have a significant effect on the environment.” (Guidelines, § 15061, subd. (b)(3), italics added; see Muzzy Ranch Co. v. Solano County Airport Land Use Com. (2007) 41 Cal.4th 372, 386-387 [60 Cal.Rptr.3d 247, 160 P.3d 116].) This exacting requirement exceeds an agency’s obligation under section 15300.2(c), before applying a categorical exemption, to consider the evidence in its files and preliminarily rule out a reasonable possibility of significant effects. This well-established difference in standards undermines the court’s claim that a project’s classification as categorically exempt has no significant procedural advantage.
Furthermore, an agency may find that a project falls within a categorical exemption without first making an express or definitive finding that no section 15300.2 exception applies; the burden is on the party challenging the categorical exemption to show that an exception applies. (Committee to Save the Hollywoodland Specific Plan v. City of Los Angeles (2008) 161 Cal.App.4th 1168, 1186-1187 [74 Cal.Rptr.3d 665].) In addition, project proponents seeking to invoke a categorical exemption may employ comparative arguments that are not available to project proponents seeking to invoke the commonsense exemption. Thus, the availability of the commonsense exemption for projects meeting its narrow standard of “certainty” does not negate the advantages that a categorical exemption confers.
The court is thus mistaken that the categorical exemption statutes have “no purpose or effect ... if ... a showing of . . . potential environmental effect *1131 precludes application of all categorical exemptions.” (Maj. opn., ante, at p. 1102.) Without this erroneous premise, there is no reason to construe “due to unusual circumstances” as an independent requirement in section 15300.2(c) or to adopt a separate standard of review for the determination of “unusual circumstances.” As explained above, this approach is at odds with section 15300.2(c)’s origins in Chickering and Friends of Mammoth. Section 15300.2(c) affirms the principle that “where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper.” (Chickering, supra, 18 Cal.3d at p. 206.) And just as a project belonging to an exempt class will have no significant effects “in the absence of unusual circumstances” (Friends of Mammoth, supra, 8 Cal.3d at p. 272), a project that may have significant effects, despite belonging to an exempt class, is necessarily a project that presents unusual circumstances. The only question for a court reviewing an agency’s section 15300.2(c) determination is whether substantial evidence supports a fair argument that the project will have significant environmental effects. (See Friends of “B” Street v. City of Hayward (1980) 106 Cal.App.3d 988, 1002 [165 Cal.Rptr. 514].) It need not be more complicated than that.
Today’s decision ventures a panoply of reasons why Chickering should not be read to mean what it says, including the opaque contention that Chickering'& interpretation of section 21084(a) somehow violates “the Legislature’s express directive in section 21083.1 ‘not [to] interpret’ the CEQA statutes and the Guidelines ‘in a manner which imposes procedural or substantive requirements beyond those’ the statutes and the Guidelines ‘explicitly state[].’ ” (Maj. opn., ante, at p. 1108.) But the court’s reluctance to follow Chickering is ultimately based not on the language or legislative history of section 21084(a), but on the premise that reading section 21084(a) and section 15300.2(c) in harmony with Chickering would deprive categorical exemptions of any purpose or effect. Because this premise is flawed, so is the court’s haphazard effort to minimize Chickering’s simple and sensible reading of section 21084(a).
III.
It is true that over the years, the Courts of Appeal have divided on whether “unusual circumstances” and “significant effect[s]” are distinct requirements in section 15300.2(c). However, when one examines the reasoning of the many cases applying section 15300.2(c), it is clear that “unusual circumstances” and “significant effects” have invariably traveled together. In the nearly four decades since section 15300.2(c) was adopted, no published case has ever found or even hinted that a project that belongs to an exempt category yet has a reasonable possibility of significant environmental effects may nonetheless evade CEQA review on the ground that the effects are not *1132 due to unusual circumstances. The only court on record to have reached such a conclusion is the trial court in this case. But, as today’s opinion suggests, that conclusion is unlikely to stand. The absence of case law finding a reasonable possibility of significant effects but no unusual circumstances further confirms that section 15300.2(c) boils down to one inquiry, not two.
Indeed, most courts applying section 15300.2(c) have focused directly on whether there is a reasonable possibility that the project will have significant environmental effects. (See, e.g., North Coast Rivers Alliance v. Westlands Water Dist. (2014) 227 Cal.App.4th 832, 871-874 [174 Cal.Rptr.3d 229] [finding no evidence of possible significant environmental effects while assuming without deciding that there were “unusual circumstances”]; Banker’s Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego (2006) 139 Cal.App.4th 249, 278-281 [42 Cal.Rptr.3d 537] [rejecting application of the exception on the ground that there were no significant environmental effects]; San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist. (2006) 139 Cal.App.4th 1356, 1392-1394 [44 Cal.Rptr.3d 128] (San Lorenzo) [no substantial evidence of significant environmental effects]; Santa Monica Chamber of Commerce v. City of Santa Monica (2002) 101 Cal.App.4th 786, 800-801 [124 Cal.Rptr.2d 731] (Santa Monica) [only effects of adopting a new preferred parking zone were socioeconomic, not environmental, and therefore not cognizable under CEQA]; Apartment Assn. of Greater Los Angeles v. City of Los Angeles (2001) 90 Cal.App.4th 1162, 1175-1176 [109 Cal.Rptr.2d 504] [insufficient evidence of significant effects]; City of Pasadena v. State of California (1993) 14 Cal.App.4th 810, 827-834 [17 Cal.Rptr.2d 766] [rejecting various arguments that a parole office located in downtown Pasadena would have significant environmental effects]; Centinela Hospital Assn. v. City of Inglewood (1990) 225 Cal.App.3d 1586, 1601 [275 Cal.Rptr. 901] (Centinela) [substantial evidence supported finding of no significant environmental effect]; McQueen v. Board of Directors (1988) 202 Cal.App.3d 1136, 1149 [249 Cal.Rptr. 439] [known existence of hazardous materials on the property threatening the environment brings the project within the exception].)
Among cases that have focused on “unusual circumstances,” it is evident that courts have treated unusual circumstances as a proxy for significant effects. In Wollmer v. City of Berkeley (2011) 193 Cal.App.4th 1329, 1350-1352 [122 Cal.Rptr.3d 781], for example, the court titled one part of its opinion “No Unusual Circumstances Preventing Categorical Exemption” and then proceeded to find no substantial evidence of potential significant environmental effects. In Voices for Rural Living v. El Dorado Irrigation Dist. (2012) 209 Cal.App.4th 1096, 1108-1113 [147 Cal.Rptr.3d 480], the court concluded that a casino requiring a high volume of water usage was an unusual circumstance for a project within the “ ‘small facilities’ ” exemption, and it then proceeded to find that such high volume water usage presented the *1133 potential for significant environmental risks. Other courts have employed similar reasoning. (See Bloom v. McGurk (1994) 26 Cal.App.4th 1307, 1315-1316 [31 Cal.Rptr.2d 914] [“existing facilities” exemption applied to medical waste facility, and there were no “ ‘unusual circumstances’ ” because the facility was located in an area zoned for heavy industry and not adjacent to a residential area that might be adversely affected by such a facility]; Azusa, supra, 52 Cal.App.4th at p. 1207 [finding landfill “unusual” because it overlay a major drinking water aquifer and presented a substantial risk of pollution].) Again, it appears that no court, other than the trial court here, has ever found a reasonable possibility of significant effects while also finding that the effects were not due to unusual circumstances.
As for the proper standard of review, many courts have held that the fair argument test applies. (Maj. opn., ante, at pp. 1113-1114 [citing cases].) One older case has disagreed, holding that section 15300.2(c) does not apply if there is substantial evidence supporting the agency’s conclusion that the project will not generate significant effects. (Centinela, supra, 225 Cal.App.3d at p. 1601.) As today’s opinion notes, “[o]ther courts have noted judicial disagreement as to whether the fair argument standard applies in this context, but have declined to decide the issue, finding that the standard’s application would not have affected the result.” (Maj. opn., ante, at p. 1113, citing Save the Plastic Bag Coalition v. City and County of San Francisco (2013) 222 Cal.App.4th 863, 879 [166 Cal.Rptr.3d 253]; Hines v. California Coastal Com. (2010) 186 Cal.App.4th 830, 855 [112 Cal.Rptr.3d 354]; San Lorenzo, supra, 139 Cal.App.4th at p. 1390; Santa Monica, supra, 101 Cal.App.4th at p. 796; Fairbank, supra, 75 Cal.App.4th at pp. 1259-1260; Ukiah, supra, 2 Cal.App.4th at p. 728, fn. 7.) In each of these cases, the court found no substantial evidence supporting a fair argument that the project would have significant environmental effects.
Thus, courts have overwhelmingly used the fair argument standard in reviewing the applicability of the significant effect exception either because they believed it was the appropriate standard or because they assumed it was. For more than two decades, courts have not felt the need to resolve the question of the proper standard because the fair argument standard has proven adequate to the task of ferreting out bogus CEQA challenges that would subject categorically exempt projects to unnecessary environmental review. The ultimate touchstone of all of these courts’ inquiries has been whether there is a reasonable possibility that the project would have significant environmental effects.
Today’s opinion observes that “evidence that the project will have a significant effect does tend to prove that some circumstance of the project is unusual.” (Maj. opn., ante, at p. 1105.) This observation, though *1134 understating the real relationship between “significant effects] ” and “unusual circumstances,” authorizes courts applying section 15300.2(c) to continue reasoning the way they have been doing for years — i.e., focusing their inquiry on whether there is a reasonable possibility that the project will have significant environmental effects. Indeed, before a project has been subject to environmental review, the only thing that courts are generally positioned to assess with confidence is whether there is a reasonable possibility of significant environmental effects. (See No Oil, Inc. v. City of Los Angeles (1974) 13 Cal.3d 68, 84-85 [118 Cal.Rptr. 34, 529 P.2d 66].) Even under the cumbersome rules set forth today, it is hard to imagine that any court, upon finding a reasonable possibility of significant effects under the fair argument standard, will ever be compelled to find no unusual circumstances and thereby uphold the applicability of a categorical exemption. Rather, courts may continue to affirm in practice what we have stated as a simple principle: “where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper.” (Chickering, supra, 18 Cal.3d at p. 206.)
Although I join the court in reversing and remanding for further proceedings, I would hold that the Court of Appeal did not err in its reading of section 15300.2(c).
Werdegar, J., concurred.
Appellants’ petition for a reahearing was denied May 20, 2015, and on May 27, 2015, the opinion was modified to read as printed above. Werdegar, J., and Liu, J., were of the opinion that the petition should be granted.