[Civ. No. 47390. Second Dist., Div. Two. May 13, 1976.]

TOPANGA BEACH RENTERS ASSOCIATION,
Plaintiff and Respondent, v.
DEPARTMENT OF GENERAL SERVICES et al.,
Defendants and Appellants.

**COUNSEL**

Eamer, Bedrosian & Kardashian and Craig S. Dummit for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Carl Boronkay, Assistant Attorneys General, Henry G. Ullerich and David R. Goldman, Deputy Attorneys General, for Defendants and Appellants.

**OPINION**

**FLEMING, J.**—Defendants Department of General Services and Department of Parks and Recreation (the State), and officials of those departments, William Zell, William Penn Mott, Jr., and Robert H. Meyer, appeal a judgment of the superior court which enjoins them from approving or carrying out any project or development at Topanga Beach, from demolishing any structures there located, and from evicting any of the 55 members of plaintiff Topanga Beach Renters Association, until the completion of an environmental impact report (EIR) that has satisfied the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.[1]).

---

[1]All further statutory references are to the Public Resources Code.

At the trial of the cause, the court entered judgment for plaintiff at the conclusion of opening statements by counsel. Although the court heard no testimony, the following facts were conceded in the trial briefs and opening statements:

The Cameron-Unruh Beach, Park, Recreational, and Historical Facilities Bond Act of 1964 (§ 5096.1 et seq.) authorized a $150,000,000 state bond issue for the acquisition and development of lands for recreational purposes. The 1965 Legislative Budget Act (Stats. 1965, ch. 757, item 362) appropriated moneys for the acquisition of beach land in the Topanga Canyon area. Prime owner of the beach land was the Los Angeles Athletic Club, which had leased numerous parcels of the land to persons who built houses on the property. These leases carried an expiration date of 31 August 1973. The State purchased the club's interest in the beach land, and in February 1973 it acquired the remaining interests in the beach land by a stipulated judgment in eminent domain. The State notified the lessees that on the expiration of their leases on 31 August 1973 only month-to-month tenancies would be authorized thereafter. In September 1973 the State opened Topanga Beach to public use and applied to the South Coast Regional Zone Conservation Commission for permission to demolish the structures on the beach. In response to the commission's request for an EIR in connection with the demolition, on 1 November 1973 the State submitted a negative declaration, i.e., a statement concluding the demolition could not have an adverse effect on the environment.[2] On 16 November 1973 plaintiff filed the present action. In November and December 1973 the commission issued permits for demolition of 79 structures at the beach, and half these structures have been demolished and cleared by the State.

---

[2] In pertinent part the declaration read:

"*Basis of Negative Declaration*

The project is not considered to have a significant effect on the environment for the following reasons:

a. The project will revert the lands to open space of high scenic and recreational values and preserve them in open space for the general benefit of the population.

b. The project will remove existing residential structures and provide a view of the ocean and adjoining lands from this portion of the Pacific Coast Highway.

c. Aesthetic qualities of the immediate area will be enhanced.

d. The project will have no growth-inducing aspects.

e. There is no existing flora or fauna of any significance.

f. There are no known archeological values on the property and there are no structures of historic or architectural consequence.

g. Improvements to be made on the property will be minimal and only those needed for public beach recreational uses will be provided."

Defendants conceded in the trial court that if CEQA applied and they were required to file an EIR or negative declaration (§ 21100), then the declaration submitted to the coastal commission for the demolition permit failed to meet CEQA standards. Defendants also declared they would file an EIR prior to any development of facilities at Topanga Beach.

The trial court apparently concluded as a matter of law that the conceded facts required defendants to file a complete EIR or negative declaration prior to any demolition of structures at Topanga Beach. Although the court rejected defendants' request for findings of fact, it stated for the record that it believed CEQA required an EIR or negative declaration "where there is an adverse effect on human beings." Defendants have appealed.

1. *Propriety of Judgment.* ■ Where the essential facts of a cause of action are admitted in the pleadings or by opposing counsel in opening statement and the introduction of evidence can add nothing by way of defense, the trial court may enter judgment for plaintiff. *(Porter* v. *Fiske,* 74 Cal.App.2d 332, 334-335 [171 P.2d 971]; Annot., 5 A.L.R.3d 1405, 1453-1454.) ■ Essentially, a judgment on admitted facts is a judgment on the pleadings, and because the facts are readily available for appellate review findings of fact are unnecessary. (See *Johnston* v. *Security Ins. Co.,* 6 Cal.App.3d 839, 844-845 [86 Cal.Rptr. 133].) This case, however, does not meet the criteria for a judgment on admitted facts. ■ Defendants argue, and we agree, that the determination of unresolved factual issues could defeat plaintiff's right to judgment.

2. *Statute of Limitations.* Section 21167, subdivision (a), authorizes an action to prevent a public agency from carrying out a project which may have a significant effect on the environment if the agency has not first made a determination of the project's environmental effect, and it requires the commencement of such an action within 180 days of the agency's decision to carry out the project. Subdivision (b) of the same section authorizes an action to review a public agency's determination of significant effect on the environment, and it requires the commencement of that type of action within 30 days of the State agency's filing of its notice of determination with the Secretary of the Resources Agency (§ 21108, subd. (a)).

Plaintiff argues that subdivision (b) of section 21167 applies and points out that it filed its complaint within 30 days of the State's filing of a negative declaration with the coastal commission. Defendants deny that subdivision (b) applies and point out that the negative declaration was not filed, or required to be filed, with the Secretary of the Resources Agency. Defendants assert the applicable part of section 21167 is subdivision (a), and because plaintiff's suit was not filed within 180 days of the decision to demolish the structures at Topanga Beach, the action is untimely.

This dispute over the timeliness of the action raises an unresolved, triable issue of fact on a potentially valid defense to plaintiff's action. From the record it would appear that subdivision (b) does not apply, since a negative declaration was not filed with the Secretary of the Resources Agency. The requirements of the Coastal Zone Conservation Commission (§ 27000 et seq.) for the issuance of a demolition permit bear no structural relationship to the requirements and limitations of CEQA, and we think a negative declaration filed in a coastal zone commission demolition proceeding carries little significance outside the statutory scheme in which it is used. Since the mere preparation of a negative declaration for coastal commission purposes does not invoke subdivision (b), factual questions remain unresolved under subdivision (a). When was the decision to demolish structures at Topanga Beach made? Did plaintiff file the present action within 180 days of that decision?

3. *Significant Effect on Environment.* Section 21100 requires a state agency to prepare an environmental impact report on any project which may have a "significant effect on the environment." Section 21083 requires the Secretary of the Resources Agency to adopt guidelines for implementation of CEQA, which shall include criteria for determining whether a project may have a significant effect on the environment. Section 21083 further provides:

". . . Such criteria shall require a finding of 'significant effect on the environment' if any of the following conditions exist:

(a) A proposed project has the potential to degrade the quality of the environment, curtail the range of the environment, or to achieve short-term, to the disadvantage of long-term, environmental goals;

(b) The possible effects of a project are individually limited but cumulatively considerable;

(c) The environmental effects of a project will cause substantial adverse effects on human beings, either directly or indirectly."

Section 21084 requires the guidelines to "include a list of classes of projects which have been determined not to have a significant effect on the environment *and which shall be exempt*" from CEQA. (Italics ours.)

The Guidelines (Cal. Admin. Code, tit. 14, § 15000 et seq.) define "environment" as "the physical conditions which exist within the area which will be affected by a proposed project including land, air, water, minerals, flora, fauna, ambient noise, objects of historic or aesthetic significance." (Guideline 15026.) "Significant effect means a substantial adverse impact on the environment." (Guideline 15040.) The Guidelines adopt the mandatory findings of significance of section 21083 (Guideline 15082) and categorically exempt various classes of projects from CEQA. (Guideline 15101.) Exempt projects include: "[1] Demolition and removal of buildings and related structures except where they are of historical, archaeological or architectural significance [formerly, 'consequence'] as officially designated by Federal, State or local governmental action." (Guideline 15101.)

At a minimum, the cause at bench presents triable issues whether the planned demolition was categorically exempt from CEQA requirements and, if not, whether within the meaning of CEQA the demolition of structures at Topanga Beach could have a significant effect on the environment. If the planned demolition was categorically exempt, or if it could have no possible significant effect on the environment, defendants had no duty to prepare either an EIR or a negative declaration.

Plaintiff argues that as a matter of law the project will have a possible significant effect on the environment and is therefore not categorically exempt from CEQA. Plaintiff points out the planned demolition will evict people from their homes (with consequent adverse effect on those people), demolish structures, clear foundations, destroy shrubs and foliage, eliminate a unique social community, change beach land from private residential to public use, and eventually necessitate the construction of public beach facilities.

Adverse effect on persons evicted from Topanga Beach cannot alone invoke the requirements of CEQA, for all government activity has some direct or indirect adverse effect on some persons. The issue is not whether demolition of structures will adversely affect particular persons but whether demolition of structures will adversely affect the environment of persons in general. (§ 21083, subd. (c).) On the surface, it would appear that the effects of clearing private structures from a beach and returning the land to its natural state could only benefit the environment of persons in general. If adverse effects on the environment are possible, plaintiff must prove that possibility. The one-time, chance destruction of a few shrubs in the course of demolition cannot invoke the requirements of CEQA, for Guideline 15040 defines "significant effect" as "substantial adverse impact on the environment." Since nothing in the conceded facts establishes the substantiality of such destruction, plaintiff must present proof to support such a possibility. 'Finally, the State's claim to a categorical exemption from the requirements of CEQA for demolition of structures (Guideline 15101) presents factual issues which the court could not resolve without taking evidence. The beach is already open for public use. Are structures of cultural significance to be demolished? Will additional facilities be required immediately on demolition?

4. *Project.* Guideline 15069 states in part: "Where individual projects are, or a phased project is, to be undertaken and where the total undertaking comprises a project with significant environmental effect, the lead agency must prepare a single EIR for the ultimate project. Where an individual project is a necessary precedent for action on a larger project, or commits the Lead Agency to a larger project, with significant environmental effect, an EIR must address itself to the scope of the larger project. . . ."

Defendants concede that someday Topanga Beach may be developed beyond clearance of structures and restoration of the beach to its natural state and that such future development may significantly affect the environment. On the basis of this concession, plaintiff argues that even if CEQA does not apply to the demolition of structures alone, it applies to the entire contemplated project and an EIR should be filed before a part of the project is undertaken.

This argument raises another factual issue that can only be resolved on the taking of evidence by the trial court. The requirements of CEQA, "cannot be avoided by chopping up proposed projects into bite-size

pieces which, individually considered, might be found to have no significant effect on the environment or to be only ministerial." (*Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 726 [117 Cal.Rptr. 96].) But no evidence has been presented that future development of Topanga Beach is ánything more than an optimistic gleam in a state planner's eye. If plans and financing for Topanga Beach have matured into firm and specific state commitments, then an EIR for the entire project may presently be required. But if future development is unspecified and uncertain, we do not see how the return of Topanga Beach to its natural state could in itself have an adverse effect on the environment or what purpose would be served by an EIR that could only speculate on future environmental consequences. Evaluation of future environmental effects must await the future decisions that could cause the effects.

The judgment is reversed, and the cause remanded to the trial court for further proceedings in accordance with this opinion.

Roth, P. J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 15, 1976.