[No. A051104. First Dist., Div. Two. Dec. 17, 1991.]

ASSOCIATION FOR PROTECTION OF ENVIRONMENTAL VALUES
IN UKIAH, Plaintiff and Appellant, v.
CITY OF UKIAH, Defendant and Respondent;
BILL RAINER et al., Real Parties in Interest.

## COUNSEL

Rawles, Hinkle, Carter, Bahnke & Oglesby and Jared G. Carter for Plaintiff and Appellant.

David J. Rapport for Defendant and Respondent.

Brigham & Gaustad and Thomas S. Brigham for Real Parties in Interest.

**OPINION**

**KLINE, P. J.—**

*Introduction*

Association for the Protection of Environmental Values in Ukiah (Association) appeals the judgment of the Mendocino County Superior Court denying Association's petition for a peremptory writ of mandate and permanent injunction compelling respondent City of Ukiah (City) to rescind its determination that a residence built by real parties in interest Bill and Tami Rainer was categorically exempt under the California Environmental Quality Act (CEQA). Association sought to compel City to "conduct a thorough environmental analysis to determine whether the project may have a significant effect on the environment" and to stop all construction of the home pending such environmental review.

Association contends on appeal: (1) City abused its discretion in determining that the project was categorically exempt; (2) City failed to make required findings supporting the categorical exemption; (3) City failed to make adequate findings in granting a site development permit for the construction project and this issue was not waived by Association's failure to raise it below; (4) Association exhausted its administrative remedies.

*Statement of Facts/Statement of the Case*

The Rainers own a lot in a single-family residential district of Ukiah, California. The Rainers' lot is the last undeveloped lot in the immediate subdivision. Real party in interest Allied Savings Bank made a construction loan to the Rainers which is secured by a deed of trust against the lot. Association is composed of 16 members, including neighbors immediately to the West (the Simpsons), to the North (the Brittinghams) and the West (the Pittmans).

The Rainers' lot is 8,840 square feet. Although it meets minimum lot size and minimum frontage requirements, construction required issuance of a site development permit because the lot width at the building setback line is 51 feet, instead of the required 60 feet. The Rainers applied for and were issued a site development permit in June of 1989. They began construction, but met with opposition by their neighbors in November 1990. Upon petition by members of the Association, City revoked the permit because the actual structure was 32 inches higher than approved. The Rainers therefore redesigned the roof structure and other features of the house, which had been

framed at the point construction stopped, reducing the height and mass of the upper story approximately 36 inches. The Rainers reapplied for a site development permit and the planning department staff recommended approval. An initial environmental evaluation and checklist was prepared by the planning department on March 14, 1991. The director of planning determined that the project was subject to a class 3 categorical exemption as a single-family residence. On March 28, 1990, the planning commission determined at its regularly agendaed public meeting that the project was categorically exempt from CEQA under Guidelines section 15300.2.[1] Nevertheless, the planning commission denied the site development permit application. On April 18, 1990, on appeal by the Rainers, the city council upheld the planning commission's determination that the project was categorically exempt from CEQA requirements, and overturned the planning commission's denial of the site development permit.

On June 5, 1990, Association filed a petition for a writ of mandate and injunctive relief.[2] On August 29, 1990, the court denied Association's petition, finding that the project was categorically exempt from CEQA requirements, that findings were not required under section 21168.5 to support City's categorical exemption determination, that substantial evidence supported the exemption findings made by City, and that by failing to raise the issue of adequate findings on the categorical exemption issue before the city council, Association failed to exhaust its administrative remedies.

*Discussion*

I.

*General Framework of CEQA*

CEQA contemplates a three-step environmental review process. In *East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155 [258 Cal.Rptr. 147], the court summarized the process as follows: " ' " '[I]n CEQA, the Legislature sought to protect the environment by the establishment of administrative procedures drafted to "Ensure that the long-term protection of the environment shall be

[1]Unless otherwise indicated, statutory references are to the Public Resources Code. "Guidelines" refers to the guidelines implementing CEQA which are contained in title 14, California Code of Regulations, section 15000 et seq.

[2]Association also sought to stay construction pending judgment. At the time, the house was completely framed, and the trial court granted the stay contingent upon Association's posting of a bond in the sum of $30,000. Association never posted a bond, and construction of the house has since continued to completion.

the guiding criterion in public decisions." (§ 21001, subd. (d).) ▮ To achieve these objectives, CEQA and the guidelines issued by the State Resources Agency to implement CEQA established a three-tiered structure. If a project falls within a category exempt by administrative regulation . . . , or "it can be seen with certainty that the activity in question will not have a significant effect on the environment" . . . , no further agency evaluation is required. If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study . . . ; if that study demonstrates that the project "will not have a significant effect," the agency may so declare in a brief Negative Declaration. . . . If the project is one "which may have a significant effect on the environment," an EIR is required.' " [Citation.]' (*City of South Gate* v. *Los Angeles Unified School Dist.* (1986) 184 Cal.App.3d 1416, 1423 . . . .)" (*Id.*, at pp. 163-164.)

▮ The determination of whether an activity is subject to CEQA is the first decision made by the lead agency during the preliminary review of a proposed project. (Guidelines, §§ 15060, 15061.) Where a project is categorically exempt, it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever." (Manaster & Selmi, Cal. Environmental Law and Land Use Practice (rev. ed. 1991) § 21.06 [1], p. 21-21; see § 21080, subd. (10).)

Title 14 of the California Code of Regulations contains the Guidelines developed by the State Office of Planning and Research and adopted by the Secretary of the Resources Agency "for the implementation of [CEQA] by public agencies." (§ 21083; see *Centinela Hospital Assn.* v. *City of Inglewood* (1990) 225 Cal.App.3d 1586, 1599-1600 [275 Cal.Rptr. 901]; *East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist., supra*, 210 Cal.App.3d 155, 164.) Pursuant to section 21084, the Secretary of the Resources Agency has established a list of projects categorically exempt from the provisions of CEQA.[3] In so doing, the secretary made an express finding that the listed classes of projects "do not have a significant effect on the environment, and they are declared to be categorically exempt from the

---

[3]Section 21084 provides that the Guidelines "shall include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall be exempt from the provisions of this division. In adopting the guidelines, the Secretary of the Resources Agency shall make a finding that the list or classification of the projects referred to in this section do not have a significant effect on the environment."

requirement for the preparation of environmental documents." (Guidelines, § 15300.)[4]

Guidelines section 15303 lists single-family residences as an example of a class 3 categorical exemption. (Guidelines, § 15303.)[5] Guidelines section 15300.2 contains three exceptions to categorical exemptions. It provides in its entirety:

"(a)    Location. Classes 3, 4, 5, 6, and 11 are qualified by consideration of where the project is to be located—a project that is ordinarily insignificant in its impact on the environment may in a particularly sensitive environment be significant. Therefore, these classes are considered to apply in all instances, except where the project may impact on an environmental resource of hazardous or critical concern where designated, precisely mapped, and officially adopted pursuant to law by federal, state, or local agencies.

"(b)    Cumulative Impact. All exemptions for these classes are inapplicable when the cumulative impact of successive projects of the same type in the same place, over time is significant—for example, annual additions to an existing building under Class 1.

"(c)    Significant Effect. A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."

## II.

### Standard of Review

"Any review of decisions made pursuant to CEQA or the Guidelines is governed by sections 21168 and 21168.5 of the Public Resources Code, the provisions of which focus such review on (1) whether there is any substantial evidence in light of the whole record to support the decision; and

---

[4] Guidelines section 15300 provides:  "Section 21084 of the Public Resources Code requires these guidelines to include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall, therefore, be exempt from the provisions of CEQA. [¶] In response to that mandate, the Secretary for Resources has found that the following classes of projects listed in this article do not have a significant effect on the environment, and they are declared to be categorically exempt from the requirement for the preparation of environmental documents."

[5] Guidelines section 15303 states in relevant part that "Class 3 consists of construction and location of limited numbers of new, small facilities or structures; . . . Examples of this exemption include but are not limited to: [¶] (a) Single-family residences not in conjunction with the building of two or more such units. . . . ." (Guidelines, § 15303.)

(2) whether the agency making the decision abused its discretion by failing to proceed in the manner required by law." (*Dehne* v. *County of Santa Clara* (1981) 115 Cal.App.3d 827, 835 [171 Cal.Rptr. 753].)[6]

█ A party challenging an agency's exemption decision must produce substantial evidence that the project has the potential for a substantial adverse environmental impact. (*Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827, 844; Manaster & Selmi, Cal. Environmental Law, *supra,* § 21.06 [7], p. 21-39.) "Substantial evidence" as used in the Guidelines "means enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached. Whether a fair argument can be made is to be determined by examining the entire record. Mere uncorroborated opinion or rumor does not constitute substantial evidence." (Guidelines, § 15384, subd. (a); see *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68 [118 Cal.Rptr. 34, 529 P.2d 66]; *Leonoff* v. *Monterey County Bd. of Supervisors* (1990) 222 Cal.App.3d 1337, 1348-1349 [272 Cal.Rptr. 372]; *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400 [124 Cal.Rptr. 339]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514].)[7]

---

[6]Section 21168 provides: "Any action or proceeding to attack, review, set aside, void or annul a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure. [¶] In any such action, the court shall not exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in the light of the whole record."

Code of Civil Procedure section 1094.5 provides in relevant part: "The inquiry in such a case shall extend to the questions . . . whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Subd. (b).)

Section 21168.5 provides in its entirety: "In any action or proceeding, other than an action or proceeding under Section 21168, to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."

[7]A reasonable case may be made that the "fair argument" standard that clearly applies when reviewing a negative declaration is not the standard of review for a challenge to a decision that a project is categorically exempt. Rather, the traditional substantial evidence standard of review may be more appropriate. (Cf. *Centinela Hospital Assn.* v. *City of Inglewood, supra,*

The parties disagree whether section 21168 or 21168.5 applies. The choice of standard of review is important because Association has claimed City made inadequate findings in support of its categorical exemption determination. ▮ Section 21168 requires the agency to make findings supporting its decision, while section 21168.5 does not. As explained by *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827: "Both sections require the two-pronged inquiry stated above. However, section 21168, which applies to agencies required by law to hold hearings, requires that findings be made by the agency, that the evidence support the findings and that the findings support the ultimate decision. (Code Civ. Proc., § 1094.5, subd. (b); *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514-515 . . . .) On the other hand, section 21168.5 applies to agencies which are not required to hold hearings or make findings. That section requires only that there be substantial evidence to support the ultimate decision. (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74-75, fn. 3 . . . .)" (115 Cal.App.3d at p. 835.)

Association focuses upon the site development permit process and Ukiah City Code section 9208 which requires a site development permit for "the construction of any new structure [except single family residences on conforming lots] . . ." (subd. (a)). That ordinance also requires that the planning commission "shall consider the application for a Site Development Permit in a regular agendaed public meeting . . ." (subd. (c)); requires the commission to hold a public hearing on the proposed revocation of such a permit (subd. (g)); and provides for appeal by the applicant to the city council (subd. (h)).

As recommended by Guidelines section 15202, subdivision (b), City included environmental review as one of the subjects during its public hearing on approving the site development permit.[8] Association argues that the CEQA decision was incorporated into the site development permit

---

225 Cal.App.3d 1586, 1601; *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827, 844-845.)

However, the parties here appear to agree the "fair argument" standard is proper. Moreover, we agree with City that its determination that the project was categorically exempt survives even the "fair argument" standard of review.

[8]Guidelines section 15202 provides in relevant part:

"(a) CEQA does not require formal hearings at any state of the environmental review process. Public comments may be restricted to written communications.

"(b) If an agency provides a public hearing on its decision to carry out or approve a project, the agency should include environmental review as one of the subjects for the hearing.

"(c) A public hearing on the environmental impact of a project should usually be held when the lead agency determines it would facilitate the purposes and goals of CEQA to do so. The hearing may be held in conjunction with and as a part of normal planning activities."

decision. Consequently, the categorical exemption determination was required to be made at a public hearing.[9]

City does not dispute that the approval of a site development permit is reviewable under section 21168 and is subject to a findings requirement. Rather, City focuses on the categorical exemption decision, as separate and distinct from the site development permit approval. City argues that it is not required to conduct a hearing on its decision that the categorical exemption applies to the building project. CEQA itself "does not require formal hearings at any stage of the environmental review process. Public comments may be restricted to written communications." (Guidelines, § 15202, subd. (a).) Guidelines section 15202 advises that where the agency provides a public hearing, it "should include environmental review as one of the subjects" (subd. (b)) and that a public hearing on a project's environmental impact "should usually be held when the lead agency determines it would facilitate the purposes and goals of CEQA to do so." (Subd. (c).) These provisions do not create a legal obligation to hold a public hearing. In *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827, the court held that local ordinances did not require the board of supervisors to hold a hearing on plaintiff's appeal from the planning commission's decision to grant a categorical exemption, even though hearings were required on appeals taken from certain types of planning commission decisions such as use permits and architectural and site approval permits. (*Id.,* at p. 836.) The court concluded that "despite the fact that it did so, the board was not required by law to conduct a hearing on plaintiffs' appeal from the planning commission's grant of exemption . . . ." (*Ibid.*) Thus, the court reviewed the decision under section 21168.5. (*Ibid.*)

City has adopted "Guidelines for Implementation of the California Environmental Quality Act." (Res. Nos. 73-41 & 74-37.) While requiring public hearing on approval or disapproval of an environmental impact report (EIR) or negative declaration, where a hearing is required on the project itself (Res. No. 73-41, art. 5, § 4), these local guidelines do not *require* a hearing on a categorical exemption to be combined with the hearing on the project. Nor do they require a hearing on the categorical exemption determination.

The cases addressing the issue of the appropriate standard of review for the grant of a categorical exemption almost uniformly adopt section 21168.5

---

[9]Association's argument finds some support in Manaster and Selmi, California Environmental Law and Land Use Practice, *supra,* which lists cases involving approval of a tentative subdivision map, zoning variance, or conditional use permit as typical of those subject to judicial review under section 21168. (Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra,* § 23.04 [1], pp. 23-14–23-15.)

as the statute, whether or not the agency has held a public hearing on the matter. (See *Centinela Hospital Assn.* v. *City of Inglewood, supra,* 225 Cal.App.3d 1586, 1599; *East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist., supra,* 210 Cal.App.3d 155, 165; *McQueen* v. *Board of Directors* (1988) 202 Cal.App.3d 1136, 1144 [249 Cal.Rptr. 439]; *Lewis* v. *Seventeenth Dist. Agricultural Assn.* (1985) 165 Cal.App.3d 823, 830 [211 Cal.Rptr. 884]; *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827, 836.)[10]

■ That City chose to combine approval processes for the site development permit and the categorical exemption in a public hearing does not mean the public hearing was mandated by state law or local ordinance. We believe review of the CEQA exemption decision under section 21168.5 is appropriate.

It makes sense to review the grant of a categorical exemption under section 21168.5, whether made in the context of issuance of a building permit, a site development permit or an application for some other type of governmental approval or entitlement, unless local ordinances expressly require a public hearing on the exemption decision. To hold otherwise might discourage agencies from combining and coordinating their approval processes as recommended by CEQA. Further, our decision is consistent with CEQA's encouragement of environmental review at the earliest feasible stage (Guidelines, § 15004, subd. (b)(2)) and conforms to the definition of a the "project" as "the whole of an action" and the focus upon the "activity which is being approved" and not each separate governmental approval. (Guidelines, § 15378, subds. (a) and (c).)

Were we to conclude otherwise and assume that section 21168 supplied the appropriate standard of review, we would conclude that the findings requirement was adequately met here. The Secretary of Resources made the ultimate finding in determining that single-family residences of the type here sought to be built were categorically exempt from CEQA. (Guidelines, § 15303, subd. (a).) By finding this project came within the categorical exemption, the city council by necessary implication found inapplicable exceptions for location, cumulative impact and significant effect on the environment due to unusual circumstances. (See *Centinela Hospital Assn.* v. *City of Inglewood, supra,* 225 Cal.App.3d 1586, at p. 1601 ["substantial

---

[10]In *Myers* v. *Board of Supervisors* (1976) 58 Cal.App.3d 413 [129 Cal.Rptr. 902], the court reviewed the grant of a categorical exemption under section 21168. However, as noted in *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d 827, both parties in *Myers* agreed that review was governed by section 21168. (*Id.,* at p. 835, fn. 2, citing *Myers* v. *Board of Supervisors, supra,* at p. 422.)

evidence supports the *implied finding* in the notice of exemption that the facility would not cause any significant environmental effects" (italics added)]; *Lewis* v. *Seventeenth Dist. Agricultural Assn., supra,* 165 Cal.App.3d 823, 829 ["By finding themselves within the categorical exemption in CEQA guideline section 15323, appellants *necessarily rejected* the exception in section 15300.2 (italics added)"].) No case cited to us or found by independent research requires express findings that the exceptions to the exemption do not apply. *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], points out that the purpose of a findings requirement in review under Code of Civil Procedure section 1094.5 is "to bridge the analytic gap between the raw evidence and ultimate decision or order." (11 Cal.3d at p. 515.) This purpose is served here by the secretary's grant of the exemption and the City's determination that it applied to this particular project.

*East Peninsula Ed. Council, Inc.* v. *Palos Verdes Peninsula Unified School Dist., supra,* 210 Cal.App.3d 155, does not require findings of the nonexistence of each of the exceptions to a categorical exemption. Rather, it requires the agency to consider the issue of significant effects and cumulative impacts of a proposed project in determining whether the project is exempt from CEQA where there is some information or evidence in the record that the project might have a significant environmental effect. (*Id.,* at pp. 171-173.)

III.

*No Substantial Evidence Supporting a Fair Argument of Significant Environmental Impact*

*A.* ■ Association first argues that the project was not subject to a categorical exemption at all as it was a "discretionary project" within the meaning of section 21080, subdivision (a).[11] Association builds this argument on its assertion that the categorical exemption for single-family residences contained in Guidelines section 15303, subdivision (a) is intended to apply only to building of residences where no discretion is exercised and the project is ministerial. Association is clearly wrong. Ministerial projects are already exempt from CEQA requirements under section 21080, subdivision

---

[11]"(a)   Except as otherwise provided in this division, this division shall apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps (except where the project is exempt from the preparation of an environmental impact report pursuant to Section 21166.)" (§ 21080, subd. (a).)

(b)(1).[12] In Guidelines section 15300.1 the secretary explains the relationship of categorically exempt projects and ministerial projects as follows:

"Section 21080 of the Public Resources Code exempts from the application of CEQA those projects over which public agencies exercise only ministerial authority. *Since ministerial projects are already exempt, Categorical Exemptions should be applied only where a project is not ministerial under a public agency's statutes and ordinances.* The inclusion of activities which may be ministerial within the classes and examples contained in this article shall not be construed as a finding by the Secretary for resources that such an activity is discretionary." (Italics added.)

Had approval for the project required only issuance of a building permit[13] or other such ministerial act, the project would have been exempt under section 21080, subdivision (b)(1). Because approval of the project was discretionary due to the need for a site development permit, the categorical exemption of Guidelines section 15303 came into play.

*B.* No substantial evidence in the record supported a fair argument that the construction of this single-family dwelling was subject to any of the exceptions set forth in Guidelines section 15300.2. No evidence whatsoever was introduced to support an argument that the project was subject to either the "Location" exception of Guidelines section 15300.2, subdivision (a) or the "Cumulative Impact" exception of subdivision (b). On appeal, Association fails to point to any evidence that either of these two exceptions may have applied. Rather, it bases its attack on the asserted lack of findings by the City as to the nonexistence of either exception—an argument we have rejected above.

The location exception has a specific meaning. It only applies "where the project may impact on an environmental resource of hazardous or critical concern where designated, precisely mapped, and officially adopted pursuant to law by federal, state, or local agencies." (Guidelines, § 15300.2, subd. (a).) There is no suggestion that the house is so located and no evidence was presented to the City which could have supported such a finding.[14] Nor could the City find that the cumulative impact exception applied. That exception can only apply "when the cumulative impact of successive

---

[12]"This division shall not apply to the following: (1) Ministerial projects proposed to be carried out or approved by public agencies. [¶] . . . (10) All classes of projects designated [as exempt] pursuant to Section 21084." (§ 21080, subds. (b)(1), (b)(10).)

[13]Guidelines section 15268 creates a presumption that the issuance of a building permit is a ministerial act.

[14]The environmental checklist specifically found that the location exception did not apply.

projects of the same type in the same place, over time is significant—for example, annual additions to an existing building under Class 1." (Guidelines, § 15300.2, subd. (b).) No serious argument or evidence was presented to the City that more than one house could be constructed on the lot or that as the last house to be constructed in this otherwise fully developed neighborhood, any sort of cumulative impact could be anticipated.

### Significant Effect Due to Unusual Circumstances

The parties focus on the third and most important exception to the categorical exemption—"where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Guidelines, § 15300.2, subd. (c).)

In examining this exception, we must differentiate between adverse impacts upon particular persons and adverse impacts upon the environment of persons in general. As recognized by the court in *Topanga Beach Renters Assn.* v. *Department of General Services* (1976) 58 Cal.App.3d 188 [129 Cal.Rptr. 739]: "[A]ll government activity has some direct or indirect adverse effect on some persons. The issue is not whether [the project] will adversely affect particular persons but whether [the project] will adversely affect the environment of persons in general. (§ 21083, subd. (c).)" (*Id.*, at p. 195.) There was no evidence presented that construction of a single-family dwelling on this lot—the last to be developed in a neighborhood of single-family residences—would adversely affect the environment of persons in general. Moreover, the height, view and privacy objections raised by the Association impacted only a few of the neighbors and were properly considered by City in connection with its site development permit approval, along with other aesthetic concerns. These concerns did not affect the environment of persons generally and did not result from "unusual circumstances."

The issues of soil stability and water runoff raised by the letter of Engineering Geologist Naohiko Noguchi to Charles Pittman, the next door neighbor to the Rainer house, and the letter and statements of Pittman regarding his conversation with Robert Wallen about earthquake faults and proper construction of the house do not provide substantial evidence of the type required under the exception. In his letter, Noguchi states he inspected the house site on April 16, 1990. He did not determine the depth of the perimeter foundation or the interior piers. He states there that it was not evident whether the footings are founded within stable, high quality soils or not and he states that it may be prudent to excavate a small test pit or two in order to evaluate the nature of the foundation-bearing materials. Noguchi did

not express an opinion that the hillside consists of unstable soil or that the foundation is founded on unstable soil. He merely suggests that test borings may be prudent. His opinion does not conflict with the opinions of Architect Bob Axt and Engineer Howard Bashford who stated that no active earthquake faults exist on the property and that the foundation had been adequately engineered. Moreover, the Uniform Building Code requires the building official to inspect excavations for foundation footings, including steel reinforcing and forms, prescribes standards for footings and slope stability and authorizes additional tests and inspection where advisable. The building official had information which Noguchi lacked concerning the depth of the foundation and the quality of the soils. He had approved the foundation plans which were partially engineered and had inspected and approved the foundation excavations and the foundation as it was being constructed. He found the slope stability and foundation plans and construction complied with Uniform Building Code standards and posed no health or safety risks. Noguchi's letter raised a common issue of proper construction technique. This concern was satisfactorily addressed by standard building code requirements. Noguchi's letter did not suggest the possibility of adverse environmental effects due to unusual circumstances and does not provide an evidentiary basis for application of the exception.

Pittman's statements regarding Robert Wallen's statements to him that the site was on an earthquake fault, that it was unsuitable for building, and that the builder should be required to excavate down to solid ground and to construct a retaining wall were properly disregarded by the City. Wallen did not express any of these opinions to the City at any proceeding, either orally or in writing, the basis for his opinion was not revealed and his qualifications to express the opinion were not established. Under the circumstances, these hearsay statements did not constitute the sort of substantial evidence upon which a finding of potential significant adverse environmental impact could be based. "Mere uncorroborated opinion or rumor does not constitute substantial evidence." (Guidelines, § 15384, subd. (a); *Leonoff* v. *Monterey County Bd. of Supervisors, supra*, 222 Cal.App.3d 1337, 1348.)

Pittman's statement that in the many years he has lived next door, he has observed a substantial amount of water drain off of and from under the Rainer lot onto his property is not evidence of an adverse impact from the *construction* of the Rainer house. There was no evidence that construction of the house would have any additional effect on runoff from the lot. (See *Newberry Springs Water Assn.* v. *County of San Bernardino* (1984) 150 Cal.App.3d 740, 748-749 [198 Cal.Rptr. 100] [to meet the "fair argument" burden, project opponents must produce some evidence, other than their

unsubstantiated opinions, that a project will produce a particular adverse effect, and "[a]lthough common sense tells us a 900-cow dairy farm will have an effect on the environment . . ." petitioner's concern about flies and odor "is not supported by any *evidence* of fly or odor concentration close to dairies . . ." (italics in original)].) Moreover, Pittman's drainage concern is adequately addressed by the standard provisions of the Uniform Building Code. Chapter 70 of the Uniform Building Code provides the building official with the authority to correct any unusual drainage problem that "adversely affects the safety, use or stability of a public way or drainage channel" by requiring detailed reports and engineered plans from engineering geologists, geotechnical engineers and soils engineers. (Uniform Bldg. Code, §§ 7004, 7006.) Surface and groundwater runoff are common and typical concerns with sloping lots and in this context on the evidence presented cannot be considered unusual circumstances.

We are convinced from our review of the record that no substantial evidence was presented supporting a reasonable possibility that construction of this residence would have a significant effect upon the environment due to unusual circumstances. Neither the size of the house (2,700 square feet), nor its height, nor its hillside site is so unusual in the vicinity as to constitute the type of unusual circumstance required to support application of this exception. The house would have been exempt as a ministerial project (requiring only a building permit and no exercise of discretion by the City) but for the narrowness of the lot. Association argues that the project was unusual because the lot was nonconforming so that a site development permit was required. The lot width at the building set back line is 51 feet instead of the minimum 60 feet required by the Ukiah City Code. The lot exceeds the minimum single-family residential lot size in the City by more than 2,000 square feet and complies with side yard setback requirements. (Ukiah City Code, § 9019.) A site development permit was required only because the lot is nine feet narrower than the minimum lot width. Objections raised by the Association, however, relate to the height of the house and not its width. The potential environmental impacts which Association posits seem to us to be normal and common considerations in the construction of a single-family residence and are in no way due to "unusual circumstances."

In the absence of substantial evidence supporting a fair argument that one of the exceptions to the categorical exemption applies, we conclude that the City did not abuse its discretion in determining the project to be categorically exempt from CEQA requirements.

## IV.

### *Exhaustion and Waiver*

On this appeal, Association challenges for the first time City's asserted failure to make required findings in connection with its approval of the site development permit.[15] We conclude that Association has waived this challenge. (See *Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; *Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1990) ¶ 8.229, p. 8-54.) In the trial court, Association challenged the asserted failure of the City to make findings with respect to the categorical exemption approval. Association never raised the issue of a failure to make adequate findings on the separate approval of the site development permit. We have carefully reviewed the writ petition, supporting points and authorities and supplemental pleadings filed below. Despite its contention to the contrary, Association simply failed to raise the issue of the asserted inadequacy of findings in connection with approval of the site development permit below.[16]

Our conclusion makes it unnecessary to address City's statute of limitations arguments or to determine whether Association adequately exhausted its administrative remedies.

The judgment is affirmed. Each party shall bear its own costs on appeal.

Smith, J., and Peterson, J., concurred.

---

[15]City approved the site development permit "with the findings as stated in the staff report that the project does meet standard R-1 Zoning Code regulations of setback, height, plan use density and is consistent with the General Plan."

[16]In Association's supplemental points and authorities, filed June 14, 1990, Association states that City has approved issuance of site development permit 90-19 without preparing an EIR or negative declaration; that City did so based upon its determination that this project is categorically exempt under the Guidelines; and that "[t]his determination is not supported by any 'findings' and it was not preceded by or based upon any study to address the questions whether any of the 'exceptions' to the 'categorical exemption' provided by [Guidelines section] 15303 apply to this case." It is clear throughout this and the other documents filed in the trial court that Association was referring to a failure to make findings in connection with approval of the categorical exemption and a failure to make findings as to the inapplicability of the exceptions.