[No. H015082. Sixth Dist. Apr. 9, 1997.]

DAVIDON HOMES et al., Plaintiffs and Appellants, v.
CITY OF SAN JOSE, Defendant and Respondent.

COUNSEL

McCutchen, Doyle, Brown & Enersen, Stephen L. Kostka, Michael Durkee, Geoffrey L. Robinson and Grant Guerra for Plaintiffs and Appellants.

Joan R. Gallo, City Attorney, George Rios, Assistant City Attorney, Robert Fabela and Joseph DiCiuccio, Deputy City Attorney, for Defendant and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, J.**—The City of San Jose adopted Ordinance No. 24680, which provided for a geological study of a designated area in the foothills. A second phase of the study required invasive testing techniques, including deep borings and installation of inclinometers. The city found the project was exempt from environmental review under California Code of Regulations, title 14, section 15061, subdivision (b)(3) of the California Environmental Quality Act (CEQA) guidelines. (Cal. Code Regs., tit. 14, § 15000 et seq.) Appellants Davidon Homes and Davidon Corporation (hereafter referred to in the singular as appellant) challenged this finding in the trial court on the basis that there was no evidence in the administrative record to support it. The trial court denied appellant's petition for a writ of

mandate, agreeing there was no evidence but finding it was appellant's burden to produce substantial evidence. We conclude this was error and we will reverse the court's judgment.

## BACKGROUND

In 1993, the City Council of San Jose imposed a moratorium on development approvals in a portion of the east foothills of San Jose, based on concerns about slope stability in the area. At the time, 11 proposals for residential developments in the area were under consideration, including the Suncrest development planned by appellant on approximately 52 acres. A five-member geologic review panel was retained to review various geologic reports and to clarify the nature of potential geologic and/or geotechnical hazards in the moratorium area.

The geologic review panel reported its conclusions that the moratorium area was "underlain not by a single massive landslide, but by multiple individual landslides with varying potential for future destructive movement" and further that "portions of the landslides can be reactivated in the future by seismic events, heavy rainfall or other sources of water, or by other factors disturbing the site, such as human-caused changes in topography, surface drainage, or surface loads." The city council determined that the city's existing geologic hazard ordinance did not adequately address the unique geologic concerns of the moratorium area. The council therefore directed that the city attorney draft an ordinance amending the geologic hazard ordinance, which would establish the moratorium area as a geologic hazard area and would require a regional study as a condition of new development in the area. It was felt that single site-specific studies could not accurately reflect the subsurface conditions and that "[d]eep borings, aerial photography, and new techniques for seismic analysis should be employed in a way that considers a future building site as part of a larger interconnected region."

On August 23, 1994, the city held a public hearing on the proposed amendment to the geologic hazard ordinance. Among other things, the proposed amendment established a special geologic hazard study area in the moratorium area and provided that "[a]ll land contained in the Special Geologic Hazard Study Area is considered to be underlain by large, deep-seated, active landslides unless demonstrated to the contrary by the Phase I Regional Study and, if required, a Phase II Study." (San Jose Ord. No. 24680, adding § 17.10.600 to San Jose Mun. Code.) The amendment specified that no clearances for new construction would be issued until the phase I study was completed for the entire area. (*Ibid.*)

The purpose of phase I of the regional study was to "define the limits of active and large deep-seated landsliding, fault hazards and any other geologic hazard in the . . . area" and to identify subregions which could be exempted from phase II on the basis that they were not underlain by landslides or would not be negatively impacted by conditions in other subregions. As to those exempted areas, development proposals could proceed after phase I was completed. (§ 17.10.610.) It was estimated that phase I would cost approximately $100,000 and would take approximately 12 months to complete. The cost was to be borne by the landowners in the geologic hazard area.

Phase II required a full report regarding slope stability to be prepared by an engineering geologist or geotechnical engineer at the landowner's expense, including analysis from large diameter borings, deep continuous sample borings, installation of surface monuments, installation of inclinometers, and other methods of slope stability monitoring. (§ 17.10.615.)

Appellant submitted a letter of protest to the August 23, 1994, city council meeting, objecting to the proposed amendment on various grounds. Appellant argued in part that adoption of the proposed amendment without environmental review violated CEQA because the project description failed to adequately address the potential environmental impacts of the required testing. "For example, the installation of inclinometers, required large diameter borings and deep-continuous sampled borings required in the Phase II studies are sure to have noise, dust and visual impacts on surrounding residents, wildlife and plant life, water quality, and have other impacts that have not been analyzed."

The proposed amendment passed by a nine-to-one vote on August 23, 1994. On August 30, 1994, Ordinance No. 24680, amending the previous geologic hazard ordinance, chapter 17.10 of title 17 of the San Jose Municipal Code, was formally adopted. The amended ordinance recites in a preamble that it was found to be categorically exempt from environmental review under CEQA, pursuant to title 14, section 15061, subdivision (b)(3), of the California Code of Regulations.

Appellant timely petitioned the superior court for a writ of mandate ordering the city to vacate its decision adopting Ordinance No. 24680 and finding that the project was exempt from CEQA review. Appellant argued that the city made no attempt to determine whether there would be any adverse environmental impacts from the geological studies and tests required by the ordinance, and that the city did not respond to objections suggesting possible environmental impacts.

The court issued a statement of decision in which it found that the record contained no evidence, either pro or con, "as to whether or not environmental testing of the type authorized by the amendment could possibly significantly impact the environment." The court further found that appellant, as the party challenging the exemption decision, had the burden of producing substantial evidence showing that the ordinance could possibly result in significant environmental impacts. The court therefore upheld the city's decision and denied the petition for writ of mandate.

## RELEVANT CEQA LAW

It is state policy in California that "the long-term protection of the environment . . . shall be the guiding criterion in public decisions." (Pub. Resources Code, § 21001, subd. (d); *Kaufman & Broad-South Bay, Inc.* v. *Morgan Hill Unified School Dist.* (1992) 9 Cal.App.4th 464, 467 [11 Cal.Rptr.2d 792].) In order to implement this policy, CEQA and the guidelines issued by the State Resources Agency (Cal. Code Regs., tit. 14, § 15000 et seq., hereafter Guidelines) have established a three-tiered process to ensure that public agencies inform their decisions with environmental considerations.

The first tier is jurisdictional, requiring that an agency conduct a preliminary review in order to determine whether CEQA applies to a proposed activity. (Guidelines, §§ 15060, 15061.) Activities which are not "projects" as defined by section 15378 are not subject to CEQA review. (Guidelines, § 15061, subd. (b)(1).) Furthermore, the Legislature has determined that ministerial projects are exempt from CEQA review, as are certain other projects, such as those of an emergency nature, even though adverse effects might result. (Pub. Resources Code, § 21080, subd. (b)(1), (2); Guidelines, §§ 15061, subd. (b)(2), 15260.) In addition, the Guidelines set forth a list of exempt categories or classes of projects which have been determined by the Resources Agency not to have a significant effect on the environment. (Pub. Resources Code, § 21084, subd. (a); Guidelines, §§ 15061, subd. (b)(2), 15300 et seq.)

A project not exempted by statute or under a category listed in the Guidelines may nonetheless be found to be exempt under section 15061, subdivision (b)(3). That subdivision describes the so-called "common sense exemption," where "[t]he activity is covered by the general rule that CEQA applies only to projects which have the potential for causing a significant effect on the environment. Where it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA." A discussion accompanying this Guideline explains its purpose as follows: "Subsection (b)(3)

provides a short way for agencies to deal with discretionary activities which could arguably be subject to the CEQA process but which common sense provides should not be subject to the Act. [¶] This section is based on the idea that CEQA applies jurisdictionally to activities which have the potential for causing environmental effects. Where an activity has no possibility of causing a significant effect, the activity will not be subject to CEQA." (2 Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1996) pp. 1110-1111.)

If the agency finds the project is exempt from CEQA under any of the stated exemptions, no further environmental review is necessary. The agency may prepare and file a notice of exemption, citing the relevant section of the Guidelines and including a brief "statement of reasons to support the finding." (Guidelines, §§ 15061, subd. (d), 15062, subd. (a)(3).) If, however, the project does not fall within any exemption, the agency must proceed with the second tier and conduct an initial study. (Guidelines, § 15063.) If the initial study reveals that the project will not have a significant environmental effect, the agency must prepare a negative declaration, briefly describing the reasons supporting that determination. (Guidelines, §§ 15063, subd. (b)(2), 15070.) Otherwise, the third step in the process is to prepare a full environmental impact report (EIR) on the proposed project. (Guidelines, §§ 15063, subd. (b)(1), 15080; Pub. Resources Code, §§ 21100, 21151.)

## ISSUES

In this case Ordinance No. 24680 included a recitation that it was found to be exempt from CEQA under Guidelines section 15061, subdivision (b)(3), without any further comment or explanation. Appellant argues that the city's exemption determination was not supported by the evidence and that the city did not proceed in accordance with CEQA and the Guidelines.

The parties agree that Public Resources Code section 21168.5 provides the appropriate standard of review in this case. Under that section, the issue is whether the agency abused its discretion. "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (Pub. Resources Code, § 21168.5; *Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 573 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) On appeal, our task is the same as the trial court's, "that is, to review the agency's actions to determine whether the agency complied with procedures required by law." (*Al Larson Boat Shop, Inc.* v. *Board of Harbor Commissioners* (1993) 18 Cal.App.4th 729, 738 [22 Cal.Rptr.2d 618].) The

trial court's conclusions are not binding on us. We review the administrative record independently. (*Gentry* v. *City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375-1376 [43 Cal.Rptr.2d 170].)

Having done so here, however, we agree with the trial court that the administrative record is devoid of any evidence regarding possible environmental impacts resulting from the geological studies ordered as part of Ordinance No. 24680, with the exception of the written and oral objections interposed by appellant. In its letter submitted at the meeting of August 23, 1994, appellant argued that the city's exemption finding was without any evidentiary support. Appellant wrote: "The City has also failed to study potential impacts from the processes that have been described. For example, the installation of inclinometers, required large diameter borings and deep-continuous sampled borings required in the Phase II studies are sure to have noise, dust and visual impacts on surrounding residents, wildlife and plant life, water quality, and have other impacts that have not been analyzed. The impacts of the persons and machinery used to install the equipment necessary to conduct tests for both phases has [*sic*] also not been studied. In short, the City has not attempted to determine whether there will be any adverse impacts from the extensive geotechnical work required by the Ordinance." These concerns were reiterated by counsel for appellant at the public hearing. There was no comment by any city council member. The only response was an observation by a member of the public who spoke in favor of the ordinance and opined that the tests required by the ordinance would be no more invasive than tests which had already been done in the moratorium area.

Given this paucity of record evidence regarding possible environmental effects of the ordered testing, the deciding question becomes whether appellant or respondent had the burden of producing such evidence at the administrative hearing. Appellant argues that it is incumbent upon the agency, in the course of a preliminary review under CEQA, to consider possible environmental effects and to produce substantial evidence to support an exemption determination. An agency abuses its discretion if there is no basis in the record for its determination that the project was exempt from CEQA. (See, e.g., *McQueen* v. *Board of Directors* (1988) 202 Cal.App.3d 1136, 1149 [249 Cal.Rptr. 439]; *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 81 [118 Cal.Rptr. 34, 529 P.2d 66].) City contends that case law supports a contrary view, that "[a] party challenging an agency's exemption decision must produce substantial evidence that the project has the potential for a substantial adverse environmental impact." (*Association for Protection etc. Values* v. *City of Ukiah* (1991) 2 Cal.App.4th 720, 728 [3 Cal.Rptr.2d 488] (*Ukiah*); *Dehne* v. *County of Santa Clara* (1981) 115 Cal.App.3d 827,

844 [171 Cal.Rptr. 753]; *City of Pasadena* v. *State of California* (1993) 14 Cal.App.4th 810 [17 Cal.Rptr.2d 766].)

We agree with appellant. A closer reading of the city's authorities reveals that those cases involved categorical exemptions under Guidelines section 15061, subdivision (b)(2), rather than the so-called "common sense exemption" of section 15061, subdivision (b)(3). ■ A categorical exemption is based on a finding by the Resources Agency that a class or category of projects does not have a significant effect on the environment. (Pub. Resources Code, §§ 21083, 21084; Guidelines, § 15354.) Thus an agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment. (*Ukiah, supra,* 2 Cal.App.4th at p. 732.) On review, an agency's categorical exemption determination will be affirmed if supported by substantial evidence that the project fell within the exempt category of projects. (*Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d at p. 842.)

In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions listed in Guidelines section 15300.2. The most commonly raised exception is subdivision (c) of section 15300.2, which provides that an activity which would otherwise be categorically exempt is not exempt if there are "unusual circumstances" which create a "reasonable possibility" that the activity will have a significant effect on the environment. A challenger must therefore produce substantial evidence showing a reasonable possibility of adverse environmental impact sufficient to remove the project from the categorically exempt class. (*Ukiah, supra,* 2 Cal.App.4th at p. 728; *Dehne* v. *County of Santa Clara, supra,* 115 Cal.App.3d at p. 844; *City of Pasadena* v. *State of California, supra,* 14 Cal.App.4th 810; *Centinela Hospital Assn.* v. *City of Inglewood* (1990) 225 Cal.App.3d 1586, 1601 [275 Cal.Rptr. 901].)

Two examples illustrate these rules. The *Ukiah* case involved a class 3 categorical exemption, which covers construction of a single-family residence. (Guidelines, § 15303, subd. (a).) The city established that the proposed construction came within this categorical exemption. The burden was then on the challengers to show, under section 15300.2, subdivision (c), that there was a reasonable possibility of significant environmental effect due to "unusual circumstances." The court reviewed the challengers' evidence and concluded it was not substantial evidence sufficient to overcome "the ultimate finding" by the Secretary of Resources that single-family residences of

this type do not have a significant effect on the environment. (*Ukiah, supra*, 2 Cal.App.4th at p. 736.)

In *City of Pasadena* v. *State of California, supra*, 14 Cal.App.4th 810, the State Department of Corrections sought to lease office space in the City of Pasadena for a parole office. The department determined that this activity fell within class 1 of the categorical exemptions because it involved the lease of existing office space and necessitated only minor alterations of the interior space. (Guidelines, § 15301, subds. (a) & (f).) This determination was supported by evidence produced by the state. The city challenged the exemption determination, citing section 15003.2, subdivision (c). The city claimed that unusual circumstances existed which removed the project from the exempt class in that the proposed parole office would be in a downtown historical area, across from a library and adjacent to a planned residential neighborhood. The city argued that the parole office would have a significant effect on this environment and in addition would pose a threat to public safety. The court affirmed the state's exemption determination, finding that the city's claims did not constitute substantial evidence sufficient to support a reasonable possibility of significant environmental effects. (14 Cal.App.4th at p. 827.)

In both of these cases, as well as other categorical exemption cases relied upon in the city's brief, the agency first conducted an environmental review and based its determination that the project was categorically exempt on evidence in the record. It is appropriate under such circumstances for the burden to shift to a challenger seeking to establish one of the exceptions to produce substantial evidence to support "a reasonable possibility" that the project will have a significant effect on the environment. (Guidelines, § 15300.2, subd. (c).)

 In the case of the common sense exemption, however, the agency's exemption determination is not supported by an implied finding by the Resources Agency that the project will not have a significant environmental impact. Without the benefit of such an implied finding, the agency must itself provide the support for its decision before the burden shifts to the challenger. Imposing the burden on members of the public in the first instance to prove a possibility for substantial adverse environmental impact would frustrate CEQA's fundamental purpose of ensuring that government officials "make decisions with environmental consequences in mind." (*Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283 [118 Cal.Rptr. 249, 529 P.2d 1017].)

In this case the city's action was supported only by a conclusory recital in the preamble of the ordinance that the project was exempt under Guidelines

section 15061, subdivision (b)(3). There is no indication that any preliminary environmental review was conducted before the exemption decision was made. The agency produced no evidence to support its decision and we find no mention of CEQA in the various staff reports. A determination which has the effect of dispensing with further environmental review at the earliest possible stage requires something more. We conclude the agency's exemption determination must be supported by evidence in the record demonstrating that the agency considered possible environmental impacts in reaching its decision.

An agency's obligation to produce substantial evidence supporting its exemption decision is all the more important where the record shows, as it does here, that opponents of the project have raised arguments regarding possible significant environmental impacts. The city contends that appellant's claims regarding the possible environmental effects of the ordinance were entirely speculative and did not constitute substantial evidence. (See, e.g., *Dehne* v. *County of Santa Clara, supra*, 115 Cal.App.3d at p. 845.) The Guidelines provide that "[m]ere uncorroborated opinion or rumor does not constitute substantial evidence." (Guidelines, § 15384, subd. (a).) As we have discussed, however, it was not appellant's burden to produce substantial evidence here, in the absence of any evidence produced by the city supporting its exemption determination. Moreover, the showing required of a party challenging an exemption under Guidelines section 15061, subdivision (b)(3) is slight, since that exemption requires the agency to be *certain* that there is *no possibility* the project may cause significant environmental impacts. If legitimate questions can be raised about whether the project might have a significant impact and there is any dispute about the possibility of such an impact, the agency cannot find with certainty that a project is exempt. As the court in *Myers* v. *Board of Supervisors* (1976) 58 Cal.App.3d 413 [129 Cal.Rptr. 902] observed, the exemption under subdivision (b)(3) should be reserved for those "obviously exempt" projects, "where its absolute and precise language clearly applies." (58 Cal.App.3d at p. 425.)

In *Myers*, the County of Santa Clara found that a proposed minor land division was exempt under class 4, which covered "Minor Alterations to Land." On appeal the court found that the county had improperly included a minor land division within this class of categorical exemptions. The court then went on to consider whether the common sense exemption (formerly Guidelines, § 15060) would apply, and concluded it would not. The court found that the claims raised by the project's opponents, "even if exaggerated or untrue" were sufficient to remove the project from the class " '[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment, . . .' " (*Myers* v. *Board of Supervisors, supra*, 58 Cal.App.3d at p. 427.)

The city argues that the challengers in *Myers* had raised "explicit claims" whereas here appellant's claims were mere conjecture. (*Myers* v. *Board of Supervisors*, *supra*, 58 Cal.App.3d at p. 427.) It is true that the challenger's evidence in *Myers* was stronger than that produced by appellant. The cases are not comparable however. The project's opponents in *Myers* were not responding to a proposed Guidelines section 15061, subdivision (b)(3) exemption but were challenging the inclusion of the project in the particular class of categorical exemptions. This involves a different showing, as we have discussed above. While the court in *Myers* addressed the common sense exemption, it did so only secondarily and cannot be understood as defining the evidentiary showing sufficient to defeat that exemption.

We do not agree with appellant that any possibility of an environmental impact, however remote or outlandish, will be sufficient in every case to remove a project from exempt status under Guidelines section 15061, subdivision (b)(3). That would render the common sense exemption meaningless. We believe, however, that if a reasonable argument is made to suggest a possibility that a project will cause a significant environmental impact, the agency must refute that claim *to a certainty* before finding that the exemption applies.

Here appellant argued before the city council that the invasive testing required by the ordinance, including wide-diameter boring, deep continuous sample borings and installation of monuments and inclinometers in the subject area, would cause adverse environmental effects. These activities, appellant claimed, would result in noise, dust, and visual impacts on surrounding residents, wildlife and plantlife. Whether such impacts are "significant" for CEQA purposes depends on whether they cause "a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance." (Guidelines, § 15382.) It appears, however, that the required testing will necessarily result in *some* physical changes in the environment. Appellant's argument on its face was therefore not outside the realm of common sense. We believe under the circumstances that the city was required to address the question whether there was any possibility that these physical changes might amount to significant environmental effects.

■ The city contends the record did contain substantial evidence that the phase II activities will have no significant environmental impact because it showed that the same types of invasive testing have been done in the past in the subject area without any adverse effects. The city suggests furthermore

that it is absurd to require environmental review of tests done for the purpose of environmental review.

While it is apparent that a significant amount of geologic testing has been done in this area over the years, there is no indication that any previous tests were considered for their possible effects on the environment. Thus the evidence of prior testing is not substantial evidence of a lack of environmental effect. Moreover, there is no evidence regarding the possible cumulative effect of repetitive tests of this nature in the same area. Finally, it cannot be assumed that activities intended to protect or preserve the environment are immune from environmental review. (See, e.g., *Dunn-Edwards Corp.* v. *Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644 [11 Cal.Rptr.2d 850]; *Building Code Action* v. *Energy Resources Conservation & Dev. Com.* (1980) 102 Cal.App.3d 577 [162 Cal.Rptr. 734].)

The city also argues that the ordinance could conceivably result in no testing whatsoever because phase I of the project does not require testing and it remains to be determined whether testing will be required in phase II and if so how extensive. Courts have consistently rejected similar contentions in CEQA cases. CEQA is not confined to the immediate effects of an agency's decisions but should be applied whenever physical changes to the environment are a reasonably foreseeable result of the activity. (Guidelines, § 15378, subd. (a); *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at pp. 281-284; *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 395 [253 Cal.Rptr. 426, 764 P.2d 278].) Here, the geologic review panel has determined that the entire area is underlain with deep-seated, active landslides. The purpose of phase I is to determine the areas which will not be subject to the testing required in phase II. Thus it appears reasonably foreseeable that the ordinance will result in phase II testing in the area.

We conclude that there was no substantial evidence in the record to support the city's determination that Ordinance No. 24680 was exempt from CEQA review. By determining the ordinance to be exempt under Guidelines section 15061, subdivision (b)(3), without considering possible environmental effects or supporting its decision with substantial evidence, the city failed to proceed in a manner required by law. The city therefore abused its discretion. (Pub. Resources Code, § 21168.5.) If the city finds to a certainty, when this matter is returned to it, that there is no possibility significant environmental impacts may result from the required testing, and that finding is supported in the record, the city may determine that the ordinance is exempt under section 15061, subdivision (b)(3). If it cannot make such a

finding, it must proceed to the next tier of environmental review and conduct an initial study. (Guidelines, § 15063.)

### DISPOSITION

We reverse the trial court's order and judgment denying appellant's petition for a writ of mandate, and we order that the court issue a writ of mandate directing the city to set aside its determination that Ordinance No. 24680 is exempt from CEQA review on grounds that such determination is not supported by the record. Appellant shall have costs on appeal.

Cottle, P. J., and Premo, J., concurred.

A petition for a rehearing was denied April 29, 1997, and respondent's petition for review by the Supreme Court was denied July 9, 1997.