[No. F039802. Fifth Dist. Dec. 12, 2002.]

SHAEN MAGAN, Plaintiff and Appellant, v.
COUNTY OF KINGS et al., Defendants and Respondents.

COUNSEL

Doyle, Penner, Bradley & Armstrong and David Doyle for Plaintiff and Appellant.

Denis A. Eymil, County Counsel, and Peter D. Moock, Assistant County Counsel, for Defendants and Respondents.

OPINION

WISEMAN, J.—Appellant Shaen Magan filed a petition for writ of mandate challenging an ordinance adopted by respondents County of Kings and Kings County Board of Supervisors (collectively, County) regulating land application of sewage sludge in Kings County. The Kings County Board of Supervisors determined that the ordinance was categorically exempt from review under the California Environmental Quality Act (CEQA) as an action taken by a regulatory agency for the protection of the environment. The trial court concluded there was substantial evidence in the record to support the determination. Appellant brings this decision to the Court of Appeal.

Let us get this straight: We have a party whose business it is to dump sewage sludge generated in Southern California on agricultural property located in the San Joaquin Valley. His complaint is that the board of supervisors violated environmental laws when it took regulatory action phasing out and ultimately prohibiting this practice. Astoundingly, he alleges there was a reasonable possibility that the board's decision to prohibit the spread of sewage sludge would have an adverse environmental impact. He reasons that, among other things, *not* spreading sewage sludge degrades agricultural land. We, like the trial court, do not buy it. Judgment affirmed.

PROCEDURAL AND FACTUAL HISTORIES

From January 2000 to January 2001, the Kings County Board of Supervisors held a series of public hearings to consider the issues related to the land application of sewage sludge as a fertilizer and/or soil amendment in agricultural operations in Kings County. Sewage sludge is "a solid, semisolid, or liquid residue generated during the treatment of domestic sewage in a treatment works."

On January 2, 2001, the Kings County Board of Supervisors introduced Ordinance No. 592. The ordinance sets forth the following findings:

"There are numerous unanswered questions about the safety, environmental effect, and propriety of land applying Sewage Sludge, even when applied

in accordance with federal and state regulations. Sewage Sludge may contain heavy metals, chemical pollutants, and synthetic organic compounds, which may pose a risk to public health and the environment if improperly handled. Class B Sewage Sludge, Class A Sewage Sludge, and Exceptional Quality Sewage Sludge may contain substantial amounts of residual pathogenic organisms which can be dangerous to human health. There is a lack of adequate scientific understanding concerning the risk that land applying of Sewage Sludge may pose to land, air, groundwater, surface waters and to human and animal health. It may cause loss of confidence in agricultural products from Kings County as well as the potential loss of productive agricultural lands. There is also scientific evidence demonstrating the clear potential for adverse impacts. Therefore, the continuation of this practice will unreasonably and unnecessarily jeopardize the public health, safety[,] welfare, environment and the economy of Kings County. Consequently, in order to promote the general health, safety and welfare of Kings County and its inhabitants, it is the intent of this Ordinance that the land application of Sewage Sludge, except as otherwise expressly set forth herein, shall be prohibited in the unincorporated area of Kings County.

"[Kings] County also recognizes that Exceptional Quality Sewage Sludge which has been composted, defined in this chapter as 'EQ-Compost', is considered by the U.S. Environmental Protection Agency to be a product . . . that can be applied as freely as any other fertilizer or soil amendment to any type of land. Therefore, the provisions of this Ordinance do not apply to EQ-Compost, unless specifically and expressly stated otherwise herein.

"It is the intent of this Ordinance to allow existing, already-permitted Sewage Sludge Land Application operations to continue to apply Class A Sewage Sludge and Exceptional Quality Sewage Sludge for a five-year period commencing on the effective date of this Ordinance and to allow such operations to continue to apply Class B Sewage Sludge for a two-year period commencing on the effective date of this Ordinance. With certain limited exceptions, after the two-year period, Class B Sewage Sludge would no longer be allowed to be land applied anywhere in the unincorporated territory of Kings County, and, after the five-year period, Class A Sewage Sludge and Exceptional Quality Sewage Sludge would no longer be allowed to be land applied anywhere in the unincorporated territory of Kings County."

Class B sewage sludge must meet the pathogen reduction standards set forth in 40 Code of Federal Regulations part 503.32(b) (2002). Class A sewage sludge must meet the higher pathogen reduction standards set forth in 40 Code of Federal Regulations part 503.32(a) (2002). Exceptional quality

sewage sludge must meet one of the class A pathogen reduction alternatives set forth in 40 Code of Federal Regulations part 503.32(a) and the more stringent pollution concentration standards set forth in 40 Code of Federal Regulations part 503.13(b) (3) (2002). Finally, EQ-Compost, organic composted material containing sewage sludge, must meet the standards for Exceptional Quality Sewage Sludge and undergo a process to further reduce the amount of pathogens and reach a stage of reduced biological activity.

The Kings County Board of Supervisors approved the filing of a notice of exemption determining that the adoption of the ordinance was categorically exempt from CEQA review under section 15308 of the State CEQA Guidelines[1] as an action taken by a regulatory agency for the protection of the environment. The notice of exemption, filed January 3, 2001, stated as follows: "The adoption and implementation of the ordinance is within the regulatory powers granted a [c]ounty under the police powers of the State to protect the environment. Adoption and implementation of this ordinance is a regulatory action to assure the maintenance and enhancement of the environment of Kings County. This ordinance ensures that sewage sludge applied to the soils of [Kings] County is applied in a manner consistent with the protection of the environment as well as the public health and safety, and at agronomic rates so that the farmland is not damaged."

Appellant is the holder of certain permits to apply class B sewage sludge on approximately 1,800 acres in Kings County owned by the Orange County Sanitation District. Appellant also has contracts with the Los Angeles County Sanitation District, the City of Goleta, and the City of Santa Barbara for land application of sewage sludge on property located in Kings County. On February 7, 2001, appellant filed a petition for writ of mandate challenging the County's adoption of the ordinance. The trial court denied the petition, finding the record contains substantial evidence to support the determination that the ordinance was adopted to protect and preserve the environment and was exempt from CEQA.

## DISCUSSION

Appellant argues the court erred in denying his petition for writ of mandate because 1) there is no substantial evidence in the record demonstrating that the County considered whether the ordinance could have a significant effect on the environment; and 2) there is substantial evidence in

---

[1]CEQA is codified at Public Resources Code section 21000 et seq. All statutory references are to the Public Resources Code unless otherwise indicated. The State CEQA Guidelines are set forth in title 14, section 15000 et seq., of the California Code of Regulations. All further citations will be referred to as Guidelines.

the record demonstrating a reasonable possibility of environmental impacts sufficient to remove the ordinance from the exempt class.[2] Appellant misunderstands the applicable CEQA standards and shifting burden of proof on the issue.

## I. CEQA principles

The court in *Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106 [62 Cal.Rptr.2d 612], set forth the relevant CEQA law in the case where an agency has determined a project to be categorically exempt from CEQA review:

"It is state policy in California that 'the long-term protection of the environment . . . shall be the guiding criterion in public decisions.' [Citations.] In order to implement this policy, CEQA and the [G]uidelines . . . have established a three-tiered process to ensure that public agencies inform their decisions with environmental considerations.

"The first tier is jurisdictional, requiring that an agency conduct a preliminary review in order to determine whether CEQA applies to a proposed activity. . . . In addition, the Guidelines set forth a list of exempt categories or classes of projects which have been determined by the [State] Resources Agency not to have a significant effect on the environment. [Citations.] [¶] . . . [¶]

"If the agency finds the project is exempt from CEQA under any of the stated exemptions, no further environmental review is necessary. The agency may prepare and file a notice of exemption, citing the relevant section of the Guidelines and including a brief 'statement of reasons to support the finding.' [Citations.] If, however, the project does not fall within any exemption, the agency must proceed with the second tier and conduct an initial study. [Citation.] If the initial study reveals that the project will not have a significant environmental effect, the agency must prepare a negative declaration, briefly describing the reasons supporting that determination. [Citations.] Otherwise, the third step in the process is to prepare a full environmental impact report (EIR) on the proposed project. [Citations.] [¶] . . . [¶]

". . . A categorical exemption is based on a finding by the [State] Resources Agency that a class or category of projects does not have a

---

[2]Throughout his opening brief, appellant refers to Public Resources Code section 15308. Since there is no Public Resources Code section 15308, we surmise he is referring to section 15308 of the Guidelines.

significant effect on the environment. [Citations.] Thus an agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment. [Citation.] On review, an agency's categorical exemption determination will be affirmed if supported by substantial evidence that the project fell within the exempt category of projects. [Citation.]

"In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions listed in Guidelines section 15300.2. The most commonly raised exception is subdivision (c) of section 15300.2, which provides that an activity which would otherwise be categorically exempt is not exempt if there are 'unusual circumstances' which create a 'reasonable possibility' that the activity will have a significant effect on the environment. A challenger must therefore produce substantial evidence showing a reasonable possibility of adverse environmental impact sufficient to remove the project from the categorically exempt class." (*Davidon Homes v. City of San Jose, supra,* 54 Cal.App.4th at pp. 112-113, 115; see also *Apartment Assn. of Greater Los Angeles v. City of Los Angeles* (2001) 90 Cal.App.4th 1162, 1172-1175 [109 Cal.Rptr.2d 504].)

With these principles in mind, we evaluate appellant's contentions.

II. *Consideration of ordinance's potential for significant effect on environment*

The Guidelines include a list of classes of projects that have been determined not to have a significant effect on the environment and which are therefore categorically exempt from the provisions of CEQA. (See Guidelines, § 15300.) In this case, the ordinance was found to be exempt under section 15308 of the Guidelines, which states: "Class 8 consists of actions taken by regulatory agencies, as authorized by state or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the regulatory process involves procedures for protection of the environment. Construction activities and relaxation of standards allowing environmental degradation are not included in this exemption."

■ Appellant maintains there is no substantial evidence in the record demonstrating that the County considered whether the ordinance could have a significant effect on the environment. However, the County's finding that the ordinance comes within the class 8 categorical exemption under section ·

15308 of the Guidelines necessarily includes an implied finding that the ordinance would have no significant effect on the environment. (See *Association for Protection etc. Values v. City of Ukiah* (1991) 2 Cal.App.4th 720, 731-732 [3 Cal.Rptr.2d 488].) In creating a list of projects categorically exempt from the provisions of CEQA, the Secretary of the State Resources Agency made an express finding that the listed classes of projects do not have a significant effect on the environment. (*Id.* at pp. 726-727; see also § 21084, subd. (a).)

Contrary to appellant's assertions, the County was not required to conduct an environmental analysis under CEQA after determining the ordinance to be categorically exempt. Once the agency determines that the project falls within the exemption class, no additional environmental analysis is required. (See *Apartment Assn. of Greater Los Angeles v. City of Los Angeles, supra,* 90 Cal.App.4th at p. 1172 [agency not required to conduct initial study before declaring project exempt from CEQA review]; *Association for Protection etc. Values v. City of Ukiah, supra,* 2 Cal.App.4th at p. 726 [once determination is made project is categorically exempt, project may be implemented without any CEQA compliance whatsoever].) As a result, the County only has the burden to demonstrate substantial evidence that the ordinance fell within the exempt category of projects.[3] (See *Davidon Homes v. City of San Jose, supra,* 54 Cal.App.4th at p. 115; *Dehne v. County of Santa Clara* (1981) 115 Cal.App.3d 827, 842 [171 Cal.Rptr. 753].) This, the County has done.

The notice of exemption indicates the ordinance was adopted for the maintenance, enhancement, and protection of the environment. As noted by the County, the record is replete with evidence describing the obvious hazards in applying sewage sludge to agricultural land and the need to monitor the accumulation of pollutants and pathogens in the sewage sludge. For example, the record contains a Cornell University study noting the problems associated with the accumulation of pollutants and pathogens in sewage sludge. The study concluded the federal regulations do not adequately protect human health and the environment and recommended that surface application of class B sewage sludge be based on "strict necessity,"

---

[3]Appellant relies on *East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula United School Dist.* (1989) 210 Cal.App.3d 155 [258 Cal.Rptr. 147], for the proposition that the County also has the burden of demonstrating there is a reasonable possibility the project may have a significant effect on the environment. Appellant's reliance on *East Peninsula Ed. Council, Inc.,* is misplaced. The case involved a unique statutory exemption under section 21080.18, which states CEQA does not apply to the closing of a public school or the transfer of its students if the only physical changes involved are categorically exempt. (*East Peninsula Ed. Council, Inc., supra,* 210 Cal.App.3d at pp. 164-166.) The case is not applicable here.

with stringent criteria. The record also contains warnings from the Centers for Disease Control and Prevention and the National Institute for Occupational Safety and Health describing the health and environmental hazards of sewage sludge and making recommendations to workers who handle the sludge in order to avoid contamination.

There are numerous other studies and documents in the record evidencing the environmental hazards in the land application of sewage sludge and the inadequacy of the federal regulations in protecting human health and the environment. In addition, the County received considerable expert testimony describing the environmental problems, including the contamination of farmland, associated with the application of sewage sludge. The ordinance, which regulates and ultimately phases out the land application of sewage sludge, was clearly adopted for the protection of the environment.

On this record, we find the County met its burden of demonstrating substantial evidence that the ordinance fell within the class 8 categorical exemption under section 15308 of the Guidelines.

III. *Evidence of reasonable possibility of environmental impacts*

■ Appellant next contends the County was required to determine whether there was a reasonable possibility that the ordinance would have an adverse environmental impact. As discussed above, appellant, not the County, had the burden of producing substantial evidence showing a reasonable possibility of adverse environmental impact sufficient to remove the ordinance from the categorically exempt class. (See *Davidon Homes v. City of San Jose, supra*, 54 Cal.App.4th at p. 115; see also Guidelines, § 15300.2, subd. (c).) Appellant has failed to meet his burden.

Appellant first maintains the title of the ordinance, "Regulating the Land Application of Sewage Sludge," makes it self-evident the ordinance will have environmental consequences. In a related argument, appellant claims the requirements set forth in the ordinance, in and of themselves, show a reasonable possibility of significant effect on the environment. In both cases, however, appellant fails to show any *adverse* environmental impact.

Appellant next argues the ordinance has the following potential impacts on the environment: 1) shifts the impact of sewage sludge application to other jurisdictions which are also part of the environment of California; 2) causes sewage sludge generators such as the Orange County Sanitation District to employ additional treatment measures that will have adverse environmental impacts, including increased transportation costs and energy

consumption; 3) degrades agricultural land in Kings County; and 4) creates a potential for construction of additional facilities to permit class A sewage sludge composting.[4] Appellant has failed to support his claims with *any* evidence in the record. The claims are based entirely on speculation. Opinions which state "nothing more than 'it is reasonable to assume' that something 'potentially . . . may occur' " do not constitute substantial evidence "necessary to invoke an exception to a categorical exemption." (*Apartment Assn. of Greater Los Angeles v. City of Los Angeles, supra,* 90 Cal.App.4th at p. 1176.) " 'Substantial evidence' is defined in the . . . [G]uidelines to include 'expert opinion supported by facts.' It does not include '[a]rgument, speculation, unsubstantiated opinion or narrative.' " (*Ibid.,* fn. omitted.)

We agree entirely with the trial court's analysis: "[Appellant] has failed to produce substantial evidence to support any exception to [the class 8] exemption. Furthermore, [appellant's] speculation about future actions by the sewage sludge producing entities is outside the scope of the ordinance and, in any event, such speculative concerns are too vague and imprecise for any meaningful environmental assessment." (See also *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 398 [253 Cal.Rptr. 426, 764 P.2d 278] [prophecy of future activity not required by public agency]; *Kaufman & Broad-South Bay, Inc. v. Morgan Hill Unified School Dist.* (1992) 9 Cal.App.4th 464, 475-476 [11 Cal.Rptr.2d 792] [specific information on future projects necessary to permit meaningful environmental assessment].)

During oral argument, appellant complained he did not have the opportunity to create a record evidencing potential adverse impacts on the environment. In effect, appellant claims CEQA law does not afford him the opportunity to present such a record. As noted by the County, it followed CEQA. It is not our role to rewrite CEQA law. That is a task better left to the Legislature.

In short, we find appellant failed to meet his burden of demonstrating substantial evidence in the record of a reasonable possibility of adverse environmental impact sufficient to remove the ordinance from the class 8 categorical exemption.

[4]With no citation to legal authority, appellant also maintains 1) the class 8 categorical exemption should not apply to the adoption of a new complex regulatory program, and 2) the County failed to consider the cumulative impact of the ordinance. We deem the points to be without foundation and waived. (See *Akins v. State of California* (1998) 61 Cal.App.4th 1, 50 [71 Cal.Rptr.2d 314] [waiver of contention by failure to cite any legal authority]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72] [where point is merely asserted by appellant without argument or authority, it is deemed to be without foundation and requires no discussion by reviewing court].)

## DISPOSITION

The judgment is affirmed. Costs are awarded to the County.

Ardaiz, P. J., and Harris, J., concurred.

On January 13, 2003, the opinion was modified to read as printed above.